JOHN P. BURBANK *v.* JOHN PILLSBURY.

A clause in a deed poll, to the effect that the grantee (a married woman) agrees for herself and for her heirs and assigns that she and they will forever make and maintain a fence all around the granted premises, will, if the deed is seasonably recorded, create an incumbrance on the granted premises, within the meaning of a covenant against incumbrances in a deed subsequently made by a person claiming under the first grantee.

THIS is an action of covenant broken, founded upon the covenant against incumbrances, the covenant of seisin, the covenant that the defendant had full power and lawful authority to sell and convey in the manner he assumed to do, and the covenant of general warranty, all contained in a warranty deed, executed by the defendant to the plaintiff and dated the seventh day of April, 1868, in common form, purporting to convey to the plaintiff a small tract of land in Haverhill; in which deed the land conveyed purported to be conveyed by metes and bounds in fee simple, without any reservation or exception, with all the privileges and appurtenances belonging to the same.

The same matter is relied on as a breach of each of said covenants, and consists of this, viz: That on the 29th day of August, 1838, one Michael Johnston, Jr., was seized and possessed of the premises conveyed, which were surrounded on three sides thereof by other adjoining lands of said Johnston, and on that day said Johnston by his deed of that date conveyed the land in controversy to one Apphia Martin, with the following clause in said deed, to wit: "Said Apphia agrees for herself and her heirs and assigns that she and they will forever make and maintain a good, substantial, and lawful fence all around said premises free from all costs and every expense to Michael Johnston, Jr., his heirs and assigns forever." This deed was seasonably recorded.

There is no record of any conveyance of the premises to any one by said Apphia Martin. But Robert French and others, being heirs of said Apphia Martin, conveyed the premises to the defendant, as such heirs, by full warranty deed in common form, dated May 8th, 1854, and said clause in said Johnston's deed to said Apphia Martin is not insert-

ed, and in no manner referred or alluded to in this deed. In the deed from the defendant to the plaintiff, reference is made in the description, to the deed of the said Robert French and others to the defendant, as follows, after naming boundaries and abuttals: " Being all and the same land conveyed to me by Robert French and others by deed recorded in Grafton County Registry of Deeds, liber 226, folio 377 ". But no reference is made to said Johnston's deed or to any other conveyance.

The plaintiff relies upon the existence of said clause in said Johnston's deed to said Apphia as a breach of each of said covenants except that of general warranty, and in respect to the covenant of general warranty he relies on that clause, and the fact that said Johnston, by virtue of said clause, claims and exercises the right of turning his animals into his lands adjoining said premises without contributing to the repair of said fences, and the further fact that said animals have strayed from said Johnston's lands upon said premises and damaged the plaintiff's crops.

And it is agreed that, if upon the grounds hereinbefore stated the plaintiff can maintain an action of covenant broken against the defendant upon any of said covenants, judgment shall be rendered for the plaintiff for such sum in damages as the court, at a jury term, shall assess, unless the defendant elect to demur generally to the plaintiff's declaration, or shall confess judgment for such amount as he may deem expedient.

It was agreed that the writ and declaration, and copies of the records of any conveyances of the premises in question might be used in the arguments of this cause, the same as if fully set forth in the agreed case.

In the argument it was suggested that Apphia Martin is described in Johnston's deed as a married woman.

*Chapman*, for plaintiff.

*Felton*, for defendant.

SMITH, J. If Apphia Martin accepted the deed of Johnston, containing a stipulation that certain services should be performed by her, she thereby (if she had legal capacity to contract), impliedly promised to perform these services, and an action of assumpsit might have been maintained against her for non-performance. " A deed poll, when accepted by the grantee, becomes the mutual act of the parties, and a stipulation on the part of the grantee, though it cannot be declared upon as his deed, yet by force of his acceptance, is a valid contract on his part, by which a right may be reserved or granted, or upon which a suit may be maintained." This language was used by Shaw, C. J., in *Newell* v. *Hill*, 2 Metcalf 180, in reference to a deed poll containing a clause almost precisely similar to that now under consideration; and there are various other cases where the same general principle has been enunciated; *Goodwin* v. *Gilbert*, 9 Mass. 510; *Minor* v. *Deland*, 19 Pick. 266; *Pike* v. *Brown*, 7 Cush. 133; *Guild* v. *Leonard*, 18

Pick. 511; *Maine* v. *Cumston,* 98 Mass. 317, Bigelow, C. J., p. 319, 320; *Atlantic Dock Co.* v. *Leavitt,* 50 Barbour 135; *Huff* v. *Nickerson* 27 Maine 106.   Indeed, there are authorities which go so far as to maintain that an action of *covenant* will lie against a party who accepts such a deed.   It is unnecessary to consider here the correctness of this position; for if the contract entered into by a grantee who accepts such a deed poll as Johnston's is not .a technical "covenant," it is none the less a binding obligation, the only difference being in the remedy; see 3 Blackstone's Com. 158; and the authorities which hold that an action of covenant will lie are referred to here only by way of showing that the obligation created by the acceptance of such a deed is so nearly akin to a covenant executed by the grantee that it has been seriously contended that there is not even a technical, much less a substantial, difference between them.

From the statements in the agreed case it is fair to presume that the heirs of Apphia Martin claimed under the deed from Johnston to her, and that it is from that source that their title and that of those claiming by conveyances from them is derived.   As the deed from Johnston to Apphia Martin was recorded prior to the plaintiff's purchase, we think the plaintiff must be held to have purchased with notice of the stipulations in that deed.   The deed was in the chain of title under which plaintiff was purchasing, and due diligence in searching the registry to examine the title would have led him to the record of the deed. The reasons and authorities which induced the decisions in *Tripe* v. *Marcy,* 39 N. H. 439, and *Stevens* v. *Morse,* 47 N. H. 532, seem applicable to this case.

The next question to be considered is whether the obligation thus entered into by the original grantee is binding on her grantees with notice, or, in other words, whether the burden of the agreement runs with the land, so far as those having notice are concerned.

Is the obligation enforceable at bar against the subsequent purchasers with notice?

The agreement related to the land and contemplated acts to be performed upon the land.   The word "assigns" is used, and the acts to be performed are of a "continuing" nature.   Probably the amount of the consideration paid for the original conveyance was less than it would have been if this stipulation had not been inserted in the deed.

The stipulation in the deed does not seem to be objectionable as tending to create "a perpetuity" in the legal sense of the term, for there is always a party *in esse* capable of releasing the promisor from the obligation; see Lord Brougham in *Keppel* v. *Bailey,* 2 Myln. & R. 517, cited in notes to *Spencer's Case,* 1 Smith's Lead. Cases, 5 Am. ed., p. 131.   Nor do we think it legally objectionable as creating an improper restraint on the free enjoyment or alienation of property.   The obligation to maintain the whole of a division fence is no more onerous than several other burdens which the law allows to be imposed on land for the benefit of persons other than the owner.   Sir Edward Sugden's observations on kindred topics are very forcible: "Rights of way, for example, show that the law allows one man's land to be perpetually

burdened with an easement in favor of another, so that he never can build upon the spot, or do any act which will interfere with the right of way. It is begging the question to say that this and the like cases are exceptions. *They* are authorized by the law, and the privileges under discussion are of a like nature; so little, indeed, is the supposed doctrine recognized by the law, that the law itself, independently of contract, prevents a man from altering his house, for example, where it would obscure the light which his neighbor has for a given period enjoyed." Sugden on Vendors, ch. 14, sec. 73. So far as the stipulation in question is concerned, the objection would seem to be disposed of by its inconsistency with the recognized doctrine, " that there may be a valid prescription binding the owner of land to maintain perpetually the fence between him and the adjoining proprietor;" see 13 Vin. Ab. 164 title Fences E. 1; 166 E. 14; *Starr* v. *Rookesby*, 1 Salkeld 335; *Binney* v. *Proprietors* &c., *in Hull*, 5 Pick. 503. In *Adams* v. *Van Alstyne*, 25 New York 232, p. 235, Denio, J. said: " Nor do I entertain any doubt but that when such a prescription is established, it fastens itself upon the land charged with the burden, and in favor of the tenements benefited by it. It is the usual case of a servitude in lands, * * * * ." If there may be a valid prescription binding the owner, certainly an express contract to the same effect cannot be void as contravening the policy of the law.

When the conveyance containing the stipulation has been recorded, the objection that the burden, if obligatory on assignees, is imposed upon persons who have never heard of its existence and who never consented to it, is not, in our view of the effect of registry, entitled to any weight. If the assignee did not in fact know it, his ignorance is owing to his own " culpable negligence in not searching the registry " and exploring the chain of title under which he is about to purchase.

Upon principle we should say that a subsequent grantee, purchasing with the notice which registry gives of such a stipulation, impliedly enters into the same engagement as the first vendee, and is liable in assumpsit for non-performance of the stipulation. We think that the first grantee in a deed poll like the present stands on the same footing with a devisee taking property under a devise imposing a burden in favor of a third party. In *Pike* v. *Brown*, 7 Cush. 133, p. 135, Shaw, C. J., expressly asserts that a devise " stands on the same footing with a deed poll." In *Veazey* v. *Whitehouse*, 10 N. H. 409, it was held that assumpsit could be maintained against the grantee of a devisee for nonperformance of the duties imposed by the devise. The principle of that decision would seem to render the present plaintiff liable to an action of assumpsit at the suit of Johnston for not maintaining the fence.

It has been asserted that covenants or agreements made by owners of land will not run with the land as a burden unless there is between the covenanter and covenantee a privity of estate arising upon the relation of tenure between them. Assuming that the statute of " Quia Emptores " is in force in this State, it is clear that no relation of tenure existed between Johnston and Apphia Martin, the original grantor and

grantee, and if the doctrine just referred to is correct, it would follow that the agreement entered into between them would not run with the land. But we are not disposed to adopt the doctrine. It is inconsistent with the rule that certain covenants for title entered into on a conveyance in fee will run with the land. There is no more privity of estate, in the sense of tenure, to support covenants which are a benefit to the land owner than there is to support those which are a burden to him. The suggestion that the running of certain covenants for title with the land is an exception, may be met by the reply of Sir Edward Sugden (just quoted) to a similar suggestion upon another topic. The doctrine that privity of estate, in the sense of privity arising upon tenure, is necessary to make the burden of a covenant run with the land, is also entirely at variance with the rule that if the owner of an estate for life conveys his whole estate reserving an annual rent which the grantee covenants to pay, the grantor may maintain covenant for rent against an assignee of the grantee. *McMurphy* v. *Minot*, 4 N. H. 251, is exactly that case. It is there said by Richardson, C. J., p. 254: "Rent may be reserved upon a grant of a man's whole estate, in which case there can be no reversion." See other cases cited in 25 New York, p. 99. Considering the question on principle, it seems to us that in a case like the present there is such a connection between the parties that the agreement should run with the land, although no relation of tenure exists.

The older authorities on the question of covenants running with the land are examined at length in the notes to *Spencer's Case* in Smith's Lead. Cases, 5th Am. ed., p. 119, 183 ; and it is not proposed to comment on them here. Mr. Hare, one of the American editors, seems to conclude that the law should be substantially as we have laid it down (see p. 182–3), but we do not understand him to assert that this conclusion is supported by the weight of authority. There are, however, some comparatively recent authorities, not referred to in Mr. Hare's note, which tend to support the view now taken. One of the most important of these is the much considered case of *Van Rensselaer* v. *Hays*, 19 New York 68. There, an annual rent had been reserved by a deed by indenture conveying the fee, the grantee covenanting for himself, his heirs, executors, and assigns, to pay said rent. It was held that this covenant run with the land, and was binding upon an assignee, independently of tenure or reversion. Denio, J., said, p. 91 : "But there is a certain privity between the grantor and grantee of the land. It is not the privity arising upon tenure, for there is no fiction of fealty annexed. It is, however, the same sort of privity which enables the grantee of a purchaser to maintain an action upon the covenants of title given to his vendor ; and it is moreover a privity of the same nature with that which obtains between the grantor and grantee of terms for life and years. It is notorious that the grantee of a term is liable upon covenants which are in their nature capable of running with the land, such as covenants to pay rent, to repair and the like, which his grantor made with the owner of the reversion. In this case there is, it is true, a reversion, and that may be indispensable to enable the covenantee

to assign the obligation made to him ; but it is not easy to see how, upon any kind of reasoning, the presence or absence of a reversion can affect the relations between the party primarily chargeable upon the covenants, and another to whom he conveys the land; charged with the performance of these covenants. It is obvious that the fiction of a feudal tenure has nothing to do with the case."

*Atlantic Dock Co.* v. *Leavitt*, 50 Barbour 135, was, we believe, a " complaint" both for damages and an injunction ; a sort of mixture, under the New York practice, of legal and equitable process. It resembles the case at bar, particularly in two respects. The covenant in the original conveyance was not executed by the grantee, and the record of that conveyance seems to have been the only evidence adduced of notice to subsequent purchasers. The plaintiffs in that case had conveyed lots to one Worcester by a deed containing the following clause : " And the said party of the second part for himself, his heirs and assigns, doth hereby covenant with the said A. D. Co. and their successors, that neither the said party of the second part, or his heirs or assigns, shall or will at any time hereafter erect or permit upon any part of said lots any buildings except of brick or stone, with roofs of slate or metal, or any manufactory of gunpowder, glue, varnish, vitriol, turpentine, or any brewery, distillery, slaughter-house, or other noxious or dangerous trade or business." This covenant was not signed by Worcester. He, however, caused the deed to be recorded, and the defendants admitted that they derived the title from the Atlantic Dock Co. through Worcester. Gilbert, J., said, p. 140 : " The acceptance by Worcester of the conveyance containing the covenant in question was equivalent to an express agreement on his part to perform the same, and this obligation affected the title of his grantees ; *qui sentit commodum sentire debet et onus.*" See also *Duffy* v. *N. Y. & H. R. R. Co.*, 2 Hilton, N. Y. C. P. 496, p. 500.

Although the reasoning of the court in *Wooliscroft* v. *Norton*, 15 Wisconsin 198, may not proceed entirely on the ground here assumed, yet the decision seems to support those just cited. It appeared that the deed of a mill lot and a certain number of square inches of water-power contained a covenant by the grantees to pay their ratable share of the expenses of keeping the dam and raceway in repair, in proportion to the number of square inches of water by them owned or used, and that, upon failure to pay, the grantors might enter upon the land and shut off the water till the payment should be made. An action of contract was maintained against subsequent purchasers from the first grantees to recover their proportion of these expenses ; the court holding that this was a covenant running with the land and binding all persons claiming under the deed.

*Kellogg* v. *Robinson*, 6 Vermont 276, is an authority very nearly in point. It was an action upon the covenant against incumbrances, the declaration alleging that in a previous deed of the premises from David Robinson to Noah Smith " is contained a stipulation that the said Noah is to make the whole of the fence around said premises, or that part of said fence adjoining said Robinson's land." Upon demur-

rer, it was held that this stipulation ran with the land and bound subsequent grantees of the title thus conveyed to Smith, although the deed did not, as in the present case, expressly name assignees. This decision is cited, without disapproval, in *Blain* v. *Taylor*, 19 Abbott's N. Y. Practice Reports. 228.

Although Sir Edward Sugden has said that if there is no privity of estate the assignee is not chargeable, (see Sugden on Vendors, ch. 14, sec. 69), yet we understand that, in the case of assignees of land where a rent-charge was reserved upon the original conveyance in fee, he concludes that covenants thus entered into by the original grantee " ought to be held to run in both directions, with the rent or interest carved out of or charged upon it (the land) in the hands of the assignee, so as to enable him to sue upon them, and with the land itself in the hands of the assignee so as to render him liable to be sued upon them." Sugden on Vendors, vol. 2, p. 492, as quoted in 19 New York, p. 90.

We have not overlooked the case of *Parish* v. *Whitney*, 3 Gray 516, which seems directly in point for the defendant. The opinion of Thomas, J., is very brief, stating conclusions without any extended reasoning; and the only case he cites (*Plymouth* v. *Carver*, 16 Pick. 183) although containing a *dictum* favorable to the defendant, does not seem exactly in point. In *Plymouth* v. *Carver*, land was conveyed by Plymouth to Shurtleff and Barnaby " on condition that they should become bound by sufficient bonds to make and maintain a portion of the highway which passed by such land." In pursuance of this grant the grantees gave a bond purporting to bind themselves, their heirs, executors and assigns, to make and maintain the highway. The action against the assignees is said to have been " founded " on this bond. The decision that the bond was only the personal obligation of the obligors, not in any manner running with the land, might well have proceeded on the ground that, by stipulating for and accepting a security of that nature, the grantors evidenced their understanding that they were to rely solely on a personal obligation of the first grantees. It seems somewhat difficult to reconcile *Parish* v. *Whitney* with the previous decision of the same court in *Savage* v. *Mason*, 3 Cush. 500. It is true that in the latter case the covenant, which related to party walls, was more beneficial than it was burdensome to the covenanting parties, but we do not see how the statement of Fletcher, J., (3 Cush. p. 505)—" there was a privity of estate between the covenanting parties in the land to which the covenant was annexed"—can be supported without asserting the principle that the privity arising upon a conveyance in fee is sufficient to make covenants run with the land and bind assignees of the first grantee. An indenture of partition between tenants in common does not seem distinguishable, so far as privity is concerned, from a conveyance by a sole owner in fee to a stranger.

The cases where the original covenanting parties stood in the relation of landlord and tenant are not in point, because there the relation of tenure existed; nor are the cases where covenants are entered into for the performance of acts on land, but no conveyance of land is made at the same time. In the latter class of cases " the covenantor takes

nothing in the land at the time of the covenant made," and the equit-
able considerations which apply to a covenantor and his assigns who
enjoy the land in fee under a conveyance which was a part of the same
transaction with the covenant are wanting.   Cases falling under these
classes, not being in point, have not been cited here.

Our conclusion is that the stipulation in Johnston's deed is so far
binding upon persons holding under that source of title that assumpsit
may be maintained against a subsequent grantee with notice (actual or
constructive) if he fails to perform the service stipulated for.

If the coverture of Apphia Martin prevented any legal remedy against
her, it does not bar the maintenance of an action of assumpsit against
her grantees who took the land with notice of the stipulation that they
should maintain the fence.

Thus far we have been considering the question whether the obliga-
tion is enforceable at law against the plaintiff; but if it is enforceable
in equity, though not at law, the result, so far as this case is concerned,
is the same.   Upon the authorities we think it is enforceable in equity
even if it be not regarded as an agreement running with the land upon
which an action at law could be maintained.   The equity doctrine is
clearly stated by Lord Chancellor Cottenham in *Fulk* v. *Moxhay* 2
Phillips Ch. 774.   In that case the grantee of a piece of land which
had been used as a pleasure-garden, covenanted to maintain the property
in its present form as a pleasure-garden, and also to maintain the rail-
ing around it.   Upon a petition to restrain a subsequent grantee with
notice from violating this covenant, it was contended that the defendant
could disregard the covenant, and that a court of equity had no power
to interfere.   But Lord Cottenham said, p. 777–8 : "If that were so,
it would be impossible for an owner of land to sell part of it without
incurring the risk of rendering what he retains worthless.   It is said
that the covenant being one which does not run with the land, this
court will not enforce it; but the question is not whether the covenant
runs with the land, but whether a party shall be permitted to use the
land in a manner inconsistent with the contract entered into by his
vendor, and with notice of which he purchased.   Of course, the price
would be affected by the covenant, and nothing could be more inequit-
able than that the original purchaser should be able to sell the property
the next day for a greater price, in consideration of the assignee's being
allowed to escape from the liability which he had himself undertaken.
That the question does not depend upon whether the covenant runs
with the land is evident from this, that if there was a mere agreement
and no covenant, this court would enforce it against a party purchasing
with notice of it; for if an equity is attached to the property by the
owner, no one purchasing with notice of that equity can stand in a dif-
ferent situation from the party from whom he purchased."

Decisions proceeding on the same ground were made in *Wheatman*
v. *Gibson*, 9 Simons 196, and *Coles* v. *Simes* 5 De G., M. & G. 1.
To the same effect is *Wilson* v. *Hart*, Law Rep. 1 Ch. Ap. 463,
where Turner, L. J. expressly said that the covenant in that case "did
not run with the land;" also *Western* v. *McDermott*, Law Rep. 2

Ch. Ap. 172, where the defendant conceded the point now under consideration.

In the cases cited the court restrained the defendants by injunction from doing any acts in violation of the contract; whereas in a case like the present, in order to interfere effectually, it might be necessary for a court of equity to decree, in substance, a specific performance of the contract. But the principle upon which the courts have granted injunctions equally justifies their interposition to compel the performance of this contract, if there is no other way to enforce its obligation.

The remaining question is whether the existence of this stipulation, as an obligation enforceable against the plaintiff, is a breach of the defendant's covenant against incumbrances. The answer to this question cannot depend on the mode in which the obligation is enforceable, whether in equity only, or at law, and if the latter whether by action of covenant or assumpsit. The question does not turn on matter of form but on matter of substance. If the obligation is enforced against the plaintiff it can make no very material difference to him whether that result is accomplished by bill in equity or suit at law. In either event he will have to bear what may be a very serious burden, not ordinarily annexed to landed property. By statute he would have to build only half the fence; by this deed he is to build the whole fence. This is just as much an incumbrance on the premises as the existence of a right of way, a rent-charge, or a mortgage; and its existence ought in all justice to be regarded as a breach of the defendant's covenant against incumbrances.

It is quite doubtful whether *Parish* v. *Whitney*, 3 Gray 516, can properly be considered as an authority for the defendant on this point, since it was there held that the subsequent grantees were not affected by the stipulation in the first deed. In *Kellogg* v. *Robinson*, 6 Vermont 276, it seems to be assumed that if the fence stipulation runs with the land its existence must of course be a breach of the covenant against incumbrances. In *Blain* v. *Taylor*, 19 Abbott's N. Y. Practice Reports 228, defendant had agreed to sell plaintiffs a farm " free from all incumbrances." Plaintiff, on examining the title, found recorded a covenant by a former owner to build and forever maintain a sufficient partition fence adjoining a railroad. Plaintiff alleged that defendant could not perform his contract because this fence agreement was a covenant running with the land, and was an incumbrance. The court decided in favor of plaintiffs. The decision that the agreement ran with the land was based, in great degree, on a New York statute and cannot therefore be regarded as an authority elsewhere; but the case certainly is a direct authority to the point that, when such an obligation exists and is binding on the purchaser, it constitutes an " incumbrance " within the meaning of that term as used in sales of real estate.

The fact that this plaintiff is regarded as having had notice (by the record) of this incumbrance, does not affect his right of recovery upon the covenant. His knowledge of its existence might have been the very reason for his taking a covenant within whose scope it is included. Rawle on Covenants, 3d ed., 128, 132.

Unless the defendant elects to demur, or confess, there must be

*Judgment for plaintiff.*