## EMERSON *v.* MOONEY & A.

When plaintiff by deed conveyed to the grantee a certain well and aqueduct leading therefrom, excepting a certain branch before conveyed, and the plaintiff's right of using all necessary water at certain places described, it was *held,* that the rights so excepted always remained in the grantor, and would enure to the benefit of his heirs and assigns, although there were no words of limitation.

When in such deed it was stipulated that the grantee should guarantee to the grantor a sufficient quantity of water at the places described, and the deed was accepted by the grantee, it was held that he and his assigns were estopped to deny the grantor's title, although the instrument was a deed poll and not signed by the grantee.

IN EQUITY. BILL against twelve defendants, and it was heard upon bill, answer, and proofs. The substance of the bill and answer sufficiently appears in the opinion of the court.

*S. M. Wheeler*, for plaintiff.

Plaintiff put aqueduct in Joseph Mooney's land by license. Plaintiff thereby acquired no vested interest in the realty. The license could be revoked, and plaintiff might then enter and take up his pipe. Plaintiff's property was *personal,* not real. It was not requisite to pass title to it that it be by deed. The deed of January 20, 1868, is signed by plaintiff alone. It is the only competent evidence of the second contract between plaintiff and Joseph. It is the best evidence that the property was sold to Joseph, and it shows that sale to have been of a specific part of the aqueduct, with a limitation and restriction as to the manner and extent in and to which it was to be used and enjoyed. It is a limitation in respect to *quality,* and not in defeasance: the sale was absolute, and passed the whole title to a specific part of the aqueduct; and the deed defines the way it is to be used, so that at all times there should be sufficient water at plaintiff's house, store, the Smith Emerson house, and the Barker shed, for all necessary purposes. When Joseph took plaintiff's property in accordance with the deed, he assented to at law, and in equity stipulated to perform and abide this contract as to said places, which plaintiff made a condition of selling at all. A part of the consideration moving from Joseph was the *guaranty* that sufficient water should be supplied to " said places " " for all necessary purposes," *i. e.,* so long as water shall be needed at said places. The evidence shows, and the report of referee finds, that defendants are violating the contract, and by their acts depriving plaintiff of his rights under the contract of sale. The deed, too, need not be reformed, but defendants must be forever enjoined. See deposition of plaintiff, Int. 6, and Ans., to the point that plaintiff intended, and de-

fendants' grantor understood, that plaintiff's right to the water at said places was to be perpetual.

*Ira A. Eastman*, for defendants.

The report of the referee must be taken as showing the manner in which the water is used; and the only question, as we understand it, is, as to the *extent* of the decree to be made by the court.

I. The deed from Emerson to Joseph Mooney, dated January 20, 1844, fixes the legal rights of the parties. The *well* was real estate, and the aqueduct leading therefrom was an appurtenance thereto. That deed gives a *life* estate *only* to Emerson, and the decree cannot extend beyond the term of his life. There are no words of inheritance in the deed.

II. The plaintiff's evidence entirely fails to show a case for the reformation of the deed, even though there were no exception to the evidence. But the deposition of the plaintiff, who wrote the deed himself, was incompetent, for the reason stated at the caption. Joseph Mooney, the grantee in the deed, is dead, and the defendants are privy in estate with him. The exception in the statute admitting parties as witnesses applies in this case.

Consequently, the only decree that can be made against the defendant is to restrict him to the use of the water, in the manner pointed out in the report of the referee, *during the life of the plaintiff and no longer*.

Bellows, C. J. The bill charges that the plaintiff had dug a well on the land of Joseph Mooney, and had laid an aqueduct from it through land of Ichabod Rawlings to the highway, and from thence to plaintiff's buildings, to Dudley Barker's shed, and to a dwelling-house recently occupied by Smith Emerson; that afterwards, on January 20th, 1844, the plaintiff and said Joseph Mooney made an agreement by which the said Mooney was to purchase said well and aqueduct of the plaintiff, and pay him the cost of constructing it, deducting one hundred dollars from the cost, and the plaintiff reserving the take-outs or branches to Dudley Barker's shed, and reserving water for plaintiff's house, barn, and store, and the Smith Emerson house, forever; and that on the same day the plaintiff, by deed, a copy of which is made part of the bill, conveyed to said Mooney all his right, title, and interest in and unto the aqueduct well, and aqueduct leading therefrom, to the places before mentioned, " excepting the branch taken and carried to Dudley Barker's shed, agreeably to his deed from me dated November 9th, A. D. 1843, and also my right of using all necessary water at my take-outs, viz., house, store, and the house where Smith Emerson now lives, to be used in a prudent and faithful manner; and the said William will not suffer any unnecessary waste of water conducted by means aforesaid to his said places of take-outs; and the said Joseph Mooney hereby guarantees to the said William Emerson sufficient quantity of water for all necessary purposes at said places." And the

bill alleges that afterwards, on April 2, 1845, and June, 1849, the said Joseph Mooney conveyed to the said Charles C. Mooney, one of these defendants, his right and interest in said aqueduct and well. That since said January 20th, 1844, branches have been laid from said aqueduct to the houses now occupied by the several defendants, and the places where the water from said branches is discharged is lower than where it is discharged or drawn at the house, barn, and store of the plaintiff, and at the Smith Emerson house.

That at certain seasons of the year there is not a full and sufficient supply of water for the several persons who claim a right to draw from said aqueduct; and the places of discharge at the premises of the several defendants being lower than those of the plaintiff at his house, barn, and store, and at the Smith Emerson house, he, and the persons occupying the Smith Emerson house, have been and are in a great measure deprived of the needful supply of water, and of the supply to which they are rightfully entitled by the agreement made with Joseph Mooney, and, as he claims, to which he is entitled by virtue of his right under the exception in his said deed to said Mooney.

The prayer is for a perpetual injunction against drawing the water to the prejudice of the plaintiff, his heirs and assigns, at his places of discharge at said house, barn, and store, and the Smith Emerson house; and that the deed aforesaid may be reformed if it does not conform to the agreement; and for general relief.

The answer alleges that the defendants do not know whether the plaintiff dug the well at his sole expense, or whether it was dug by the plaintiff and said Joseph Mooney, and denies that it was dug at plaintiff's sole expense. They admit the conveyance, and deny any other agreement than what is embodied in the deed. They admit the conveyance from Joseph Mooney to Charles C. Mooney, and that, since the conveyance of January 20, 1844, branches have been laid down from said aqueduct to the houses and premises now occupied by the several defendants; but deny that the places where the water from said branches is discharged are lower than where the plaintiff has a right to have it discharged on his premises and at the Smith Emerson house; and say that if the plaintiff, or the occupier of the Smith Emerson house, has been in any measure deprived of a needful supply of water, it has been caused by their own mismanagement, and not by the fault of any of the defendants.

A referee or master having been appointed, makes report that since the fall of 1864 the plaintiff has not received the quantity of water to which he was entitled by his deed from Joseph Mooney of January 20th, 1844,—evidently meaning his deed *to* Joseph Mooney; that the failure of the plaintiff to receive a supply of water is attributable to some of the defendants who are named, six of them in all;—and the referee reports the changes to be made by those defendants to secure to the plaintiff the supply of water to which he is entitled.

The defendants' counsel does not contest the right of the plaintiff to a decree restricting the defendants in the use of the water according to the referee's report, but contends that this restriction should extend no

further than during the life of the plaintiff, upon the ground that, as the exception in the deed was without words of inheritance, the plaintiff had only a life estate in the subject of the exception.

We think, however, that the estate of the plaintiff is not so limited. There are authorities, and those of a highly respectable character, which hold otherwise.

In 2 Washb. on Real Property 641, it is laid down that the same rule which requires words of inheritance in the case of a grant, applies equally to an exception, and for this is cited Shepp. Touch. 100 ; and the same doctrine is held in *Curtis* v. *Gardner*, 13 Met. 461, and also in *Jamaica Pond Aqueduct Corporation* v. *Chandler & al.*, 9 Allen 159, 170. In the latter case, BIGELOW, C. J., held that an exception in these terms, " to improve and cultivate and take the emoluments to his own use " of such part of the land conveyed as the grantors did not flow or cover with water, was a personal right excepted out of the grant in behalf of the grantor only, and not for his heirs or assigns ; and he cites for this Shepp. Touch. 100, and *Curtis* v. *Gardner*, before mentioned.

It might be plausibly urged that from the terms of the exception it was the intent of the parties to limit the use of the land not flowed to the grantor personally, and that this was the view taken by the court in that case; but however this may be, we think no such doctrine has been recognized in this State as is maintained by these authorities.

It is apparent that the doctrine recognized by the authorities cited is based largely upon the authority of Shepp. Touch. 100, and as it originally stood it would seem to favor the rule for which it is cited, although it is inconsistent with another part of the same paragraph ; as corrected, however, by Mr. Preston, the very learned and competent editor of that work, the doctrine of the Touchstone is, that " if the thing be excepted indefinitely, without saying for the life of the grantor, nor how long, it shall be taken to be an exception during the estate." This, in fact, is the very language of the Touchstone ; and the correction by Preston is in bringing into harmony with it the language of the preceding sentence. And this correction also brings the passage into harmony with the case in Dyer, page 264, which is cited by Preston as the authority for the doctrine of the Touchstone as corrected by him. In that case the husband and wife were the termors of a messuage in Fleet street called the Three Conies for a long term of years. The husband alone made a lease thereof for part of the term of years in these words, to wit, The messuage or tenement in Fleet street called the Three Conies, with all the chambers, cellars, shops, &c., excepting and reserving to the husband by his name the shops, for his own proper and sole use and occupation. The husband dying during the term, and the wife surviving, entered upon the lessee in the shops, and was re-ousted, and thereupon she brought ejectment ; and it was held that it appears by express provision before, and the shops were leased generally, and such reservation and exception is only special and temporary, to wit, during the occupation of the lessor himself, according to 3 B. 6, § 3, where trees were not merely excepted from the lease,

but that it should be lawful for the lessor to cut down, give away, and sell the trees; and it was noticed that the exception and reservation was made to the husband, the lessor, by his name, to wit, J. Hornby only, without saying to his executors and assigns; and it was also noticed that the exception, being of the shops, is of all the shops, which is simply contrary to the premises of the lease itself, and so a void exception.

It is obvious that the decision here went upon the ground that the exception of the shops was for the personal and special use of the husband alone, and was therefore temporary and to end with his life, and was not based upon the absence of words of limitation; and so it was in the case cited from 3 B. 6, § 3. This case, then, is no authority for the rule that an exception in a grant without words of inheritance gives only a life estate. That this cannot be the rule is manifest from a consideration of the nature of an exception. It is defined to be a clause in a deed whereby the grantor, lessor, &c., doth except somewhat out of that which he had granted before, or which was comprised within the generality of the terms of the deed—Shepp. Touchstone 77; or, as stated in Co. L. 47 *a*, it is ever a part of the thing granted, and of a thing *in esse*. It differs from a reservation, which is always of a thing *not in esse*, but merely created or reserved out of the thing granted or demised; Co. L. 47 *a*, as a rent, a way, and the like.

In the case of an exception, the thing excepted is exempted and does not pass by the grant, neither is it parcel of the thing granted; as, if a manor be granted except one acre thereof, hereby, in judgment of law, that acre is severed from the manor. Shepp. Touchstone 79. So it is laid down by Chancellor KENT, 4 vol. of his Commentaries, "that if the exception be valid, the thing excepted remains with the grantor with the like force and effect as if no grant had been made;" and so is 2 Washb. on Real Property 640. The exception does not in fact create an estate in the grantor, but, in respect to the parcel excepted, leaves the title in him as it was before the grant; and there can be no substantial difference in effect between a conveyance which describes in general terms the whole of a tract of land, and then excepts a part by definite boundaries, and a conveyance which describes the tract in the first instance so as to exclude the parcel not intended to be granted. In neither case can it be said that such parcel was granted. It, in fact, has always remained with the grantor. Where the title is created by the grant, it is well settled, as a general rule, that words of inheritance are necessary to confer a fee. The rule is of feudal origin, and was based upon the idea that the personal abilities of the donee or grantee were the only inducement to the gift; and therefore his estate in the land extended only to his own person, and subsisted no longer than his own life, unless the donor, by express provision in the grant, gave it a longer continuance, and extended it to his heirs. 2 Blk. Com. 108. The rule, however, has not been fully suited to the condition of a more commercial age, and it has been softened by many exceptions, some of which are stated in Co. L. 9, 10, and 2 Blk. Com. 108–9. In the case of devises, an exception was established at an early

period, and it was only necessary that the purpose to give a fee should be disclosed in some terms without requiring the use of the word heirs. Co. L. 9; 2 Blk. Com. 108–9.

In respect to an exception, we find no adjudged case in this State requiring words of inheritance to make a fee in the grantor, and we think that there has been no understanding in the profession that such a rule existed here; and unless we felt bound by a decided preponderance of authority, we should not be inclined to adopt a rule which would be likely to unsettle many titles, and at the same time is not, as we think, based upon any sound principle. Nor do we find the weight of authority in favor of such a rule. In *Wheeler* v. *Brown*, 46 Penn. St. Rep. 197, there was an exception of the coal in a tract of land, granted with a right of ingress and egress to take it away, without words of inheritance. The court held that the grantor at the time of the grant held the coal in fee simple, and because it did not pass by the conveyance he continued to hold it in fee; that the word heirs was not necessary in the reservation, for an estate of inheritance existed already in the grantor, and, unimpaired by the conveyance, it descended to his heirs at his death; and so of the right of way, which was expressly annexed to the estate in the coal, and was saved by the exception.

A similar opinion is given in *Keeler* v. *Wood*, 30 Vt. 242; of a similar character is *Smith* v. *Ladd*, 41 Maine 314, and *Winthrop* v. *Fairbanks*, 41 Maine 307. This last case was a conveyance of land, "reserving forever for myself the privilege of passing with teams and cattle across the same in suitable places to land I own south of the premises," but it was not in terms to him or to his heirs and assigns. The court, however, held that it might be regarded as an exception, and confers the benefit of an exception to the grantor, his heirs and assigns; and that the way would be appurtenant to the lands for which it was reserved, and that no words of inheritance were necessary. In this case the grantor had died, and the dominant tenement was held by a grantee of his heirs. In *Bowen & al.* v. *Connor*, 6 Cush. 132, it was held that a reservation forever of a right of way over a street to be made by the defendant enured to the benefit of the grantor and his assigns, as owners of the back lot.

Upon these views we think the exception must enure to the benefit of the plaintiff and his heirs and assigns; and this we think accords with the intent of the parties, to be gathered from the terms of the deed. Unless, then, some other objection exists, the plaintiff is entitled to a decree against the six defendants named in the referees' report, in accordance with his report; and as to the rest, they not having been shown to have interfered with the enjoyment of the plaintiff's right, the bill is to be dismissed.

The title of the plaintiff is not questioned by defendants; and it would seem that by the guaranty of the grantee, which became binding by the acceptance of the deed and the title under it, he would be estopped to deny the plaintiff's title, and so would his assigns with notice express or implied. *Newell* v. *Hill*, 2 Met. 180; *Goodwin & al.* v. *Gilbert & al.*, 9 Mass. 510.