## HARRIMAN *v.* PARK.

*Deed-poll.— Reservation—Acceptance.*

{ June 15, 1875,

Where land is conveyed by deed-poll, with a reservation that the grantee shall maintain suitable fences upon the lines of the premises, and the grantee accepts the deed, he is bound to perform the service.

H. conveyed by deed-poll a tract of land to P. and D. The deed contained the following clause: "And the said grantees agree to build and keep in repair a suitable fence, on the westerly and southerly sides of said last described premises, at their own expense." P. and D. subsequently conveyed the land to third parties, after which H. died. His executrix brought assumpsit against P. and D. to recover damages which accrued by reason of the fence being out of repair, as well after as before the death of the grantor. *Held*, that the executrix could maintain assumpsit to recover the damages that accrued prior to the death of her testator. *Held*, also, that P. and D. could not defeat her right to recover by conveying the premises to a third party.

ASSUMPSIT. The writ is dated October 19, 1872, and the declaration is as follows: "In a plea of the case for that the defendants, at Plymouth aforesaid, on the tenth day of August, 1869, in consideration that said deceased, then in full life, would grant and convey to them, by good and sufficient deed of conveyance, a certain tract of land situate in Warren in said county, promised and agreed to build and keep in repair a suitable fence on the westerly and southerly sides of said land at their own expense; and the plaintiff avers that the said deceased in his lifetime did grant and convey to said defendants said land, by good and sufficient deed of conveyance, to wit, on the tenth day of August, 1869, by warranty deed, in common form, particularly therein describing said land. Yet said defendants have not built and maintained and kept in repair a suitable fence on the westerly and southerly sides of said land, though requested so to do by said deceased in his lifetime, and by said executrix since his decease."

August 10, 1869, James Harriman, the testator, and said Ruth Harriman, by their joint deed of that date, with full joint covenants of warranty, conveyed certain lands in Benton to said defendants. Immediately after the description of the premises, and before the *habendum* in said deed, is the following clause, to wit, "and the said grantees agree to build and keep in repair a suitable fence on the westerly and southerly sides of said last described premises at their own expense."

The plaintiff offered parol evidence to prove the same contract or agreement as the one referred to in said clause, and the defendants admitted that said proof could be furnished if competent. Soon after the date of said deed, August 21, 1869, said Dickey conveyed all his

interest in said lands to said Park, who afterwards, in the same year, November 15, 1869, sold and conveyed the same lands to Knapp & Putnam. Neither Dickey nor Park has ever had any interest whatever in said lands since their said respective conveyances. James Harriman died September 1, 1870, and said Ruth was duly appointed his executrix. The plaintiff admitted that a suitable fence was built by the said defendants, and kept in repair until after Park's said conveyance to Knapp & Putnam, but claimed to recover damages which accrued by reason of said fence being out of repair as well after as before the death of said James. It was admitted by the defendants that the fence had been out of repair ever since the said Park's conveyance to Knapp & Putnam, and that by reason thereof damages accrued both before and after said James Harriman's decease.

The parties agreed that if in the opinion of the court upon the foregoing facts the action could be maintained, the damages should be assessed by an auditor to be appointed by the court,—neither party to be prejudiced in any future proceedings in this case by any admissions contained in said agreement.

The questions raised by the foregoing case were transferred to the law term of the supreme court for determination.

*Barnard*, for the plaintiff, cited 1 Ch. Pl., ch. 11, sec. 3 (9 Am. ed.), p. xii, *ib.*, p. 119, *ib.*, ch. 2, sec. 1, p. 103, 3 Esp. Rep. 42, *Hatch* v. *Crawford*, 2 Porter (Ala.) 54, *Goodwin* v. *Gilbert*, 9 Mass. 510, *Parish* v. *Whitney*, 3 Gray 516, *Plymouth* v. *Carver*, 16 Pick. 183, *Blunt* v. *Melcher*, 2 Mass. 228, 5 B. & C. 602, *Holbrook* v. *Bullard*, 10 Pick. 68, *Ackley* v. *Hoskins*, 14 Johns. 374, *Burbank* v. *Pillsbury*, 48 N. H. 475.

*G. F. Putnam*, for the defendants, cited *Plummer* v. *Plummer*, 30 N. H. 558, *Lane* v. *Thompson*, 43 N. H. 320, *Burbank* v. *Pillsbury*, 48 N. H. 475, *Newell* v. *Hill*, 2 Met. 180, *Parish* v. *Whitney*, 3 Gray 516, *Plymouth* v. *Carver*, 16 Pick. 183.

SMITH, J. 1. The defendants object that the form of action is misconceived. The well considered case of *Burbank* v. *Pillsbury*, 48 N. H. 475, is an authority directly in point, that assumpsit will lie in a case like this. "A deed-poll, when accepted by the grantee, becomes the mutual act of the parties, and a stipulation, on the part of the grantee, though it cannot be declared upon as his deed, yet by force of his acceptance is a valid contract on his part by which a right may be reserved or granted, or upon which a suit may be maintained." *Newell* v. *Hill*, 2 Met. 181. "As a general rule, where land is conveyed by deed-poll, certain duties being reserved to be performed, as no action lies against the grantee on the deed, the grantor may maintain assumpsit for the non-performance of the duties reserved." *Goodwin* v. *Gilbert*, 9 Mass. 514. To the same point is *Nugent* v. *Riley*, 1 Met. 117.*

---

* And see *Emerson* v. *Mooney*, 50 N. H. 320.                    REPORTER.

And the promise being raised by the law is not within the statute of frauds. *Goodwin* v. *Gilbert, supra.*

2. The defendants also object that the action should be brought by the heirs of James Harriman. The estate of the testator not being insolvent, his title in the adjacent land on the south and west vested in his heirs or devisees upon his decease, and not in the executrix. They were therefore entitled to the rents and profits from the time of his decease, and had the possession, or the right to the possession, from and after that date. Whatever damages accrued from the defendants' neglect to make and keep in repair the fences, after the decease of James Harriman, did not therefore accrue to his executrix; and she, as his legal representative, can only recover for such damages as accrued prior to his decease. *Plummer* v. *Plummer*, 30 N. H. 558.

3. The defendants further object that they were not bound to maintain the fences after they conveyed their interest in the land : that they were so bound, at least during the life of their grantor, is clear. They stipulated so to do by their act of accepting the deed from the plaintiff's testator containing an agreement to that effect, and they cannot be permitted to divest themselves of the burden which they assumed, nor to defeat the right which they stipulated in the deed their grantor should have to require the fences to be kept in repair at their expense— a burden for which they have been paid in the diminished price paid by them for the land—by conveying their title to a third party.

Whether the testator's heirs or devisees can maintain an action against these defendants or their assigns, for damages accruing subsequent to the decease of James Harriman, are questions that do not arise in the case now before us, and therefore need not be considered. The stipulation in the deed does not in terms extend to the heirs or assigns of either party, and can only be held to include them by holding the agreement to be a covenant running with the land. As the result of so holding would be to impose a servitude upon the land conveyed in favor of the adjoining lands on the west and south, I should be slow to give the deed such construction, unless the parties so intended ; which intention is to be gathered from the language they employed to express their meaning, and from the light of surrounding circumstances.

CUSHING, C. J. The clause in the deed from the plaintiff's testator to the defendants is in these words : "And the said grantees agree to build and keep in repair a suitable fence, on the westerly and southerly sides of said last described premises, at their own expense." On the authority of *Goodwin* v. *Gilbert*, 9 Mass. 510, *Pike* v. *Brown*, 7 Cush. 133, and the other cases cited by my brother SMITH, I think that this action may be maintained for damages sustained by the breach of the contract during the testator's lifetime ; but I find myself unable to go any further. It appears to me that the action can be rightfully maintained by the present plaintiff against the present defendants, the original grantees.

The contract in its terms does not extend any further. It does not purport to bind the heirs or assigns of the grantees, or to be in favor of the heirs or assigns of the grantor. I see no reason for assuming that the parties to this deed have intended here what they have not said.[*] It seems to me, that, if this agreement had been intended to be permanent and to be always a servitude on the granted land, to be borne in favor of the adjacent land at all times, the parties would have taken pains to have expressed all this in some way in their conveyance. It is, I believe, well enough settled, that easements like this can only be granted by deed; and the very fact that the action is assumpsit and not covenant, according to the authorities, shows that this contract, whatever else it may be, is not the deed of the defendants. *Dyer* v. *Sandford*, 9 Met. 395; *Morse* v. *Copeland*, 2 Gray 302.

If this deed had been duly signed and sealed by these defendants so that the contract would have been covenant under seal, still, according to Bell, C. J., in *Emerson* v. *Simpson*, 43 N. H. 477, the covenant being for the erection of something new upon the land, and not purporting to bind the heirs and assigns, would not run with the land. To this point is *Spencer's case*, 3 Coke 16, in which occurs the following passage: "But, in the case at bar, the covenant concerns a thing which was not *in esse* at the time of the demise made, but to be newly built after, and therefore shall bind the covenantor, his executors, or administrators, and not the assignee; for the law will not annex the covenant to a thing which hath no being." Bell, C. J., in *Emerson* v. *Simpson*, where the deed was on condition that the "grantee should forever keep up and maintain a fence on the line between the land conveyed and the grantor's land," referring to *Spencer's case*, uses the following language: "Where it was resolved that if the covenant concerns a thing which was not *in esse* at the time of the demise made, but to be done upon the land afterward (for instance, to build a new wall on some part of the premises demised), the covenantor, his executors and administrators, would be bound, but not the assignee if he was not named; for the law would not annex a covenant to a thing which had no being." If, then, according to these authorities, the necessary privity of estate could be established, which I do not see, still this covenant would not run with the land, neither could it run with the adjacent lands retained by the plaintiffs' intestate in favor of his heirs or assigns.

In *Burbank* v. *Pillsbury* there is a suggestion that, in a case like that, a specific performance would be enforced in equity against subsequent purchasers with notice; and the case of *Tulk* v. *Moxay*, 7 Phillips 774, was cited. In the case at bar, it would be necessary in the first place to reform the deed before enforcing a specific performance. If, after an investigation according to the principles of an equity court, and with all the safeguards which proceedings in equity throw around such investigations, it should be found that this deed ought to be re-

[*] See *Emerson* v. *Mooney*, 50 N. H. 317, 318, 319, 320, and *Fellows* v. *Brown*, 42 N. H. 366.          Reporter.

formed, and that the parties really intended to make a contract which should permanently charge the land conveyed, in the hands of subsequent purchasers, and in favor of the heirs or assigns owning the adjacent lands, it would make a very different case.

I do not find much force in the suggestion, made in *Burbank* v. *Pillsbury*, that it must be presumed that the grantee has had his pay for the incumbrance claimed in the reduced price of the land. If the construction of the deed were settled, and it were determined that it did create a permanent incumbrance on the land, the suggestion would be forcible that such an incumbrance had been taken into consideration; but when the very matter in hand is the construction of the contract, we cannot assume that anything more has been paid for than the parties intended to include in the bargain.

There is one further consideration. Admitting that the agreement inserted in this deed was intended by the parties to be, as I think its terms import, a merely temporary matter, to be performed by the defendants and their personal representative, for the convenience of the grantor while he should continue to own the land, there would be no difficulty on account of the statute of frauds. It would clearly be no agreement for any interest in the land, and it would be an agreement which might be performed in one year. In this view, there would be no difficulty about the statute of frauds.

In *Pike* v. *Brown*, and that class of cases where the question was as to the right of action for not performing a condition in a deed, and where the condition itself would have defeated the deed, the doctrine was put upon the ground of an implied promise, as well as upon the ground that the grantor's part of the agreement had been performed. And in *Pike* v. *Brown* it was said that implied promises are not within the statute of frauds. But in *Atlantic Dock Co.* v. *Leavitt*, 50 Barb. 135, cited in *Burbank* v. *Pillsbury*, GILBERT, J., said,—" The acceptance by Worcester of a conveyance containing the covenant in question was equivalent to an express agreement on his part to perform the same."

The cases may perhaps be distinguished, where, as in *Pike* v. *Brown*, the deed was upon a condition; and the court held that a promise was implied, from the cases when the promise is expressly written but the instrument not signed, and the acceptance of the deed is held to be evidence of consent.

In such cases there would be an express agreement, as it seems to me, for an interest in lands, and certainly an agreement not to be performed within one year, and not signed by the party to be charged. This would clearly be within the statute of frauds. In the case of *Emery* v. *Smith*, 46 N. H. 151, it was held, after a very full discussion, that the contract was not taken out of the statute by its performance on one side.

I cannot see, therefore, how this contract, if intended to be permanent, and run with the land against subsequent purchasers and in favor of the grantor's heirs and assigns who might afterwards own the adjacent land, could be saved from the operation of the statute of frauds.

If these views are correct, no action could be maintained, either by the heirs or assigns of the grantor or by his executor, for their benefit.

For these reasons, it appears to me that the action may be maintained to recover damages for the breach of the agreement during the testator's lifetime, but not for breaches afterward.

LADD, J. I agree that the plaintiff may maintain this action to recover such damage as was caused by the failure of Park and Dickey to build or cause to be built, and kept in repair, a suitable fence on the westerly and southerly sides of the land conveyed to them by the deed of August 10, 1869, during the lifetime of James Harriman. If it were necessary to go further, and determine whether by that deed an incumbrance or servitude was imposed upon the land conveyed, in favor of the adjoining lands, with respect to maintaining the fences, as now advised, I should doubt whether that effect could be given to the deed. But the question is not raised by the case, because, if such construction were given to the deed, the suit must be in the name of the heirs or devisees. It need not, therefore, be considered at this time.

According to the agreement of the parties, an auditor must be appointed to assess the plaintiff's damages.

*Case discharged.*