WALTER ZAMIARSKI et al., Appellants, *v.* THADDEUS KOZIAL et al., Respondents.

Fourth Department, April 12, 1963.

*William D. Ribyat, Jr.,* and *Daniel Cohen* for appellants.

*Michael Yust* for respondents.

HALPERN, J. The plaintiffs appeal from an order of Special Term granting the defendants' motion for summary judgment dismissing so much of the complaint as sought to enforce a restrictive covenant by injunction.

The plaintiffs and the defendants owned adjoining lots in the town of New York Mills. Both lots were originally part of a tract of land owned by James C. Greenman and his wife. Upon a subdivision map filed by Greenman, the plaintiffs' lot was designated as Lot No. 1 in Block 2. The defendants' lot adjoining the plaintiffs' lot on the south was designated as Lot No. 2 in Block 2. Both lots abutted on New York Mills Road. The plaintiffs' lot was a corner lot, lying at the intersection of Greenman Avenue and New York Mills Road.

Greenman conveyed Lot No. 1 to one Denslow in 1891 and, in that conveyance, he imposed the following setback restriction: "No building shall ever be erected on said lot within 10 feet of the lines of the streets on which same is situated or within 10

feet of the northerly or southerly or westerly lines of said lot ''. There was also a restrictive covenant forbidding the sale of intoxicating liquors, beer or ale or the use of any building on the premises for gambling or disorderly purposes. These restrictions were contained in all subsequent deeds of Lot No. 1, including the deed under which the plaintiffs took title in 1919.

Lot No. 2, the lot which is now owned by the defendants, together with Lot No. 3 directly to the south of it, was conveyed in 1911 by the trustees under Greenman's will to one Hardcastle Barnes and his wife. There was no setback restriction in the deed. The only restrictive covenant related to the sale of intoxicating liquors and the use of the premises for gambling or disorderly purposes.

In 1928, Barnes conveyed Lots No. 2 and No. 3 to one Stanley Lewek and his wife. In that deed there was inserted the following additional restrictive covenant which is the basis of the present action: '' Said parties of the second part further covenant and agree that neither they nor their assigns shall or will erect or permit on any portion of said premises any building whatsoever within 10 feet of the northerly line of said premises ''. Through mesne conveyances, these lots came into the ownership of the defendants in 1951. According to the affidavit of one of the plaintiffs, the restriction was imposed in the 1928 deed from Barnes to Lewek for the plaintiffs' specific benefit: '' When Mr. and Mrs. Barnes were preparing to sell two lots to the south of the deponents, they informed your deponent that they would protect your deponents' interest in his lot, No. 1 in Block 2, by a 10-foot set back restriction from deponents' southerly lot lines. They informed your deponent that they knew of his 10-foot set back restriction and felt that deponent should be equally protected ''.

The later conveyances of Lot No. 2, including the conveyance to the defendants, did not repeat the setback restriction contained in the deed from Barnes to the Leweks. However, the defendants were chargeable with constructive notice of the restriction by the recording of the Barnes deed. The restrictive covenant appeared in the defendants' chain of title and the defendants took subject to it (*Cambridge Val. Bank* v. *Delano*, 48 N. Y. 326). The plaintiffs also claim in the affidavit submitted by them in opposition to the defendants' motion for summary judgment that the existence of the restriction was affirmatively brought to the attention of the defendants, before the defendants erected the residence on their premises.

After acquiring title, the defendants erected a residence which was '' merely a matter of inches away from '' their northerly

line, which was the southerly line of the plaintiffs' premises, cutting off light and air from the plaintiffs' premises.

This action was brought to enforce the restrictive covenant and to compel the defendants to remove the portion of their building which was within 10 feet of the southerly line of the plaintiffs' premises. Special Term dismissed the complaint upon the defendants' motion for summary judgment on the ground that the plaintiffs had no right to enforce the restrictive covenant.

The court below seems to have felt that the plaintiffs' affidavits had not established clearly enough that Barnes had intended that the restriction should be for the plaintiffs' benefit. We believe that Barnes' intention clearly appeared from the affidavits but, even if there was doubt about it, this presented at most a question of fact and the granting of summary judgment for the defendants could not be justified on that ground. (*Booth* v. *Knipe,* 225 N. Y. 390.)

The court below also seems to have been of the opinion that even if Barnes had intended that the covenant should be for the benefit of the plaintiffs, the plaintiffs had no right to enforce it because of the peculiar rules of property law governing the right to enforce restrictive covenants. The plaintiffs had not acquired their title from Barnes. There was no privity of estate between them. Barnes apparently imposed the restriction upon the defendants' land simply as an act of friendship, so that the plaintiffs would have the same protection with respect to the side line setback restriction as Barnes had enjoyed, and his grantees would enjoy, by virtue of the restriction which had been originally imposed on plaintiffs' land.

The question is thus sharply presented in this case whether an owner of neighboring land, for whose benefit a restrictive covenant is imposed by a grantor, may enforce the covenant as a third-party beneficiary despite the absence of any privity of estate between the grantor and the neighbor.

The answer to this question in New York State is clearly " yes ". The New York courts are now committed to the view that the third-party beneficiary is entitled to enforce the restrictive covenant in a situation of this kind (*Chesebro* v. *Moers,* 233 N. Y. 75, 80; *Vogeler* v. *Alwyn Improvement Corp.,* 247 N. Y. 131, 135–137; *Bristol* v. *Woodward,* 251 N. Y. 275, 284; *Neponsit P. O. Assn.* v. *Emigrant Ind. Sav. Bank,* 278 N. Y. 248, 261; *Hungerford* v. *Ocean Gardens,* 283 App. Div. 797, 798, affd. 308 N. Y. 765; *Blakeslee* v. *Kane,* 220 App. Div. 806; cf. *Gilbert* v. *Peteler,* 38 N. Y. 165; *Equitable Life Assur. Soc.* v. *Brennan,* 148 N. Y. 661, 671–672; see, also, 13 N. Y. Jur., Covenants and

Restrictions, § 113; 4 Warren's Weed, New York Real Property, Restrictive Covenants, § 16.07).

The New York view is in accord with that adopted by the American Law Institute (5 Restatement, Property, § 541, and Illustration No. 1; see, also, Introductory Note, pp. 3243–3245). (See, generally, Clark, Covenants and Interests Running with Land [2d ed.], pp. 171–174; Reno, " The Enforcement of Equitable Servitudes in Land ", 28 Va. L. Rev. 951, 1067, 1082–1083; Ann. 21 A. L. R. 1281; Ann. 60 A. L. R. 1223; 14 Am. Jur., Covenants, Conditions and Restrictions, § 311; 21 C. J. S., Covenants, § 80; 26 C. J. S., Deeds, § 167 (1), p. 1136 *et seq.*; 3 Tiffany, Real Property [3d ed.], § 866; 7 Thompson, Real Property, § 3655 [Supp. to Perm. ed.], text accompanying n. 33A; 5 Powell, Real Property, par. 681, p. 203.)

The enforcement of a restrictive covenant by someone other than the grantor or covenantee has historically rested upon two different theories: (1) that the covenant creates an equitable servitude or easement in favor of the land of the covenantee, the benefit of which passes with the land upon its subsequent conveyance; (2) that the covenant is specifically enforcible in equity, as a contract affecting real property, by the persons intended to be benefited thereby, as third-party beneficiaries of the contract, regardless of the absence of privity of estate. (Clark, *op. cit. supra,* p. 171.) While the earlier cases in this State rested upon the equitable servitude theory, the later cases have embraced the third-party beneficiary approach (see cases *supra*).

Using the equitable servitude approach, the early cases held that there had to be privity of estate between the person who had imposed the covenant and the person seeking to enforce it, in the sense the latter had to be a grantee of the former, either directly or through mesne conveyances. Thus, under this approach, in *Korn* v. *Campbell* (192 N. Y. 490) the court enumerated the three classes of cases in which restrictive covenants could be enforced by persons other than the grantor or covenantee, as follows: (1) A uniform restriction imposed by a common grantor as part of a common plan or scheme for the benefit of all the grantees in a real estate subdivision or development could be enforced by all such grantees against each other; (2) a covenant imposed for the benefit of the grantor's remaining land could be enforced by a grantee of such lands against the owners of the restricted lands; (3) mutual covenants between the owners of adjoining lands, in effect creating equitable servitudes in each other's favor, could be enforced by the grantees of the lands against each other.

However, the third-party beneficiary theory is not limited by any concept of privity (2 American Law of Property, § 9.30, p. 425). Upon the adoption of that theory by the New York courts, the enforcibility of restrictive covenants was no longer limited to the three classes enumerated in *Korn* v. *Campbell* (*supra*). The question then became one solely of intention. The owner of the land intended to be benefited had the right to enforce the covenant, even though he did not come within any one of the enumerated classes. Of course, if the person seeking to enforce the covenant came within one of the classes, that would clearly establish that he was one of those intended to be benefited. But the need to bring the case within one of the enumerated classes would arise only in a State in which the general rule prevailed " that a third party may not enforce a contract made for his benefit " (*Vogeler* v. *Alwyn Improvement Corp.*, 247 N. Y. 131, 136–137, *supra*).

In this State, even with respect to actions at law, the trend for a long time has been strongly in the direction of allowing a donee beneficiary to recover upon a promise intended for his benefit without a showing of any additional element. Some of the earlier cases imposed the requirement that it be shown that a moral obligation, either growing out of a family relationship or growing out of the relationship of a municipality to its citizens, was owed by the promisee to the donee beneficiary (e.g., *Buchanan* v. *Tilden,* 158 N. Y. 109; *De Cicco* v. *Schweizer,* 221 N. Y. 431; *Pond* v. *New Rochelle Water Co.,* 183 N. Y. 330). But it may fairly be said that the limitations imposed by these cases have been eroded by the pronouncements by the Court of Appeals in the later cases. The law of New York now seems to be in accord with the majority view reflected in the Restatement of Contracts (§ 135), that a donee beneficiary may recover in an action at law, merely upon a showing that the promisee intended to make a gift to him of the benefit of the promise (*Seaver* v. *Ransom,* 224 N. Y. 233, 238, 241; *Ultramares Corp.* v. *Touche,* 255 N. Y. 170, 180; *Weinberger* v. *Van Hessen,* 260 N. Y. 294; *McClare* v. *Massachusetts Bonding & Ins. Co.,* 266 N. Y. 371, 379; see, also, *Wilson* v. *Costich Co.,* 231 App. Div. 346, affd. 256 N. Y. 629; 2 Williston, Contracts [Rev. ed.], § 368, p. 1078; 4 Corbin, Contracts, § 782, p. 85; § 827, pp. 302–310; 19 Fordham L. Rev. 89; 10 N. Y. Jur., Contracts, §§ 243, 246).

But even during the period when limitations still persisted with respect to the right of donee beneficiaries to recover in actions at law, they were transcended by courts of equity in the enforcement of restrictive covenants. The extension of the right

of recovery by third-party beneficiaries in cases of this type was characterized at that time as '' an extraordinary '' one but it was declared to be too well settled '' to permit withdrawal or retreat '' (*Bristol* v. *Woodward,* 251 N. Y. 275, 288, per CARDOZO, Ch. J.). What was then extraordinary has now become an ordinary application of the general principle allowing a donee beneficiary to recover upon a promise intended for his benefit, either at law or in equity.

The answer in this case pleads an affirmative defense in the nature of estoppel but that, of course, is a matter to be dealt with upon the trial. It cannot be made the basis of a summary judgment in favor of the defendants.

The order appealed from should therefore be reversed and the defendants' motion for summary judgment denied.

WILLIAMS, P. J., BASTOW, GOLDMAN and HENRY, JJ., concur.

Order unanimously reversed on the law, without costs of this appeal to any party and motion denied, without costs.