**Brooks BROWN, Jr.**

v.

**HEIRS OF Maria E. FULLER et al.**

Supreme Judicial Court of Maine.

Nov. 10, 1975.

---

Sanborn, Moreshead, Schade & Dawson by Peter T. Dawson, Brooks Brown, Jr., Augusta, for plaintiff.

Wathen & Wathen by Warren E. Winslow, Jr., Joseph B. Campbell, Lipman, Parks & Livingston, P.A. by Sumner H. Lipman, John M. Parks, Augusta, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WERNICK, Justice.

Defendant Napoleon J. Gingras has appealed from a summary judgment in favor of plaintiff Brooks Brown, Jr. entered in the Superior Court (Kennebec County).

We deny the appeal.

The following facts are undisputed.

Maria E. Fuller died on October 2, 1936 owning real property situated in Augusta, Maine on the west side of State Street and bounded on the south by land then of Vallie B. Williamson. By her will Maria E. Fuller devised this State Street lot and the residential buildings on it to the Augusta General Hospital. The devise was made subject to the restrictions that the property remain residential, no nuisance to adjacent property be created on it and no structure be erected on the lot materially higher than buildings existing at the time of Maria E. Fuller's death.

By mesne conveyances ownership of the premises devised by Maria E. Fuller to the Augusta General Hospital has passed to plaintiff Brown. He plans to operate commercial enterprises on the land and, therefore, initiated the instant action seeking (1) a declaratory adjudication that a present commercial use of the land would not violate the conditions imposed by Maria E. Fuller's devise to the Augusta General Hospital and (2) an order quieting title.

The defendants named in the action were: (1) the heirs of the late Maria E. Fuller; (2) Augusta General Hospital; (3) Joan W. Arnold a previous owner of the Fuller lot; (4) Depositors Trust Company in its capacity as executor under the will of another previous owner and as plaintiff's grantor; and (5) Napoleon J. Gingras, present owner, through mesne conveyances, of the Vallie Williamson lot which adjoins plaintiff's property. The presiding Justice appointed Warren E. Winslow, Jr., Esq., guardian ad litem and agent under 14 M.R.S.A. § 6654 for all unnamed persons.

Plaintiff moved for summary judgment in his favor on the grounds: (1) the restrictions imposed by Maria E. Fuller's will have never been enforceable because Maria E. Fuller imposed them to benefit land in which she lacked legally cognizable interest and (2) even if previously enforceable, the restrictions should now be judicially extinguished because substantial change in the State Street neighborhood has rendered them useless. Plaintiff undertook to support this latter claim with an affidavit setting forth facts tending to show the changed character of the area surrounding the Fuller lot.

By his answer to the complaint defendant Gingras contested the claim of plaintiff that the restrictions of the Fuller devise lacked legal enforceability at their inception. Further, by a counter-affidavit defendant Gingras (1) denied the assertions in plaintiff's affidavit that the character of the State Street neighborhood had substantially changed since 1936 from one primarily residential to one predominantly commercial, and (2) maintained affirmatively that the neighborhood had remained residential. Defendant Gingras also filed a counterclaim against plaintiff alleging that plaintiff had created offices for lease to various professional and business organizations on the Fuller lot in violation of the conditions allegedly imposed by the Fuller will and seeking preliminary and permanent injunctive relief against plaintiff's further use of the premises for such purposes.

In awarding summary judgment in favor of plaintiff, the presiding Justice held unenforceable the conditions set forth in the Fuller will, declared plaintiff Brown to be vested with title in the subject real estate in fee simple and ordered that the decree operate directly on the land as a release by defendants of all claims inconsistent with the adjudication.[1]

Faced with opposing affidavits indicating the existence of a genuine issue of ma-

1. The judgment below thus granted plaintiff's prayers for declaratory and injunctive relief and denied appellant's counterclaim for injunctive relief.

terial fact, viz, the changed character of the Fuller neighborhood, the presiding Justice could not properly have granted summary judgment on the ground that the restrictions, if valid, should nevertheless be judicially extinguished. See: Rule 56 M. R.C.P.; *Soper v. St. Regis Paper Comany*, Me., 341 A.2d 8 (1975). We, therefore, interpret the decision of the presiding Justice to be an acceptance of plaintiff's contention that the conditions were unenforceable at their inception.

Here at issue is the extent to which a Court exercising equity jurisdiction will order specific performance of covenants (or restrictions) which were not recognized by the common law to run with the land. The Massachusetts Supreme Judicial Court has characterized this equity jurisdiction, by which "equitable servitudes" come into being, as resting

"... on the principle that, as in equity that which is agreed to be done shall be considered as performed, a purchaser of land, with notice of a right or interest in it, subsisting in another, is liable to the same extent and in the same manner as the person from whom he made the purchase, and is bound to do that which his vendor had agreed to perform. ....[2] In this view, the precise form or nature of the covenant or agreement is quite immaterial. It is not essential that it should run with the land.

\* \* \* \* \* \*

"... It is sufficient that the intention of the parties ... to place restrictions on the use and enjoyment of the estate granted is clear." *Whitney v. Union Railway Company*, 11 Gray (77 Mass.) 359, 363, 364, 366 (1858)

It has long been thought contrary to public policy, however, to enforce as an equitable servitude a restriction imposed for the benefit of land in which, at the time of the origin of the restriction, the person creating it lacks a legally cognizable interest. See: *Smith v. Kelley*, 56 Me. 64 (1868); *Leader v. LaFlamme*, 111 Me. 242, 88 A. 859 (1913); *Caron v. Margolin*, 128 Me. 339, 147 A. 419 (1929); *Peck v. Conway*, 119 Mass. 546 (1876); *Haverhill Savings Bank v. Griffin*, 184 Mass. 419, 68 N.E. 839 (1903); *Caullett v. Stanley Stilwell & Sons, Inc.*, 67 N.J.Super. 111, 170 A.2d 52 (1961); *Maplewood Tp. v. Margolis*, 102 N.J.Eq. 467, 141 A. 564 (1928), aff'd. 104 N.J.Eq. 207, 144 A. 715 (1929).

The decisions reveal two fundamental exceptions to this principle of public policy: (1) the circumstances in which, to effect a general development scheme, an owner of a large tract divides it into building lots and imposes on each lot restrictions benefitting all the others, *Parker v. Nightingale*, 6 Allen (88 Mass.) 341 (1863); (2) the circumstances in which owners of adjoining lands agree to place on their respective properties restrictions productive of mutual benefits; see: *Trustees of Columbia College v. Lynch*, 70 N.Y. 440 (1877).[3]

Examining the purported restrictions before us in light of the principles above enumerated, we conclude that they fall outside the scope of any of the three acknowledged classes of enforceable equitable servitudes.[4]

2. The rule at common law was that a grantee who was not a signatory party to the deed did not, by accepting the deed, become legally bound by commitments contained in the deed. This principle has been abandoned in Maine (as in most jurisdictions) at least for purposes of the enforcement of equitable servitudes. Here, then, the acceptance of the testamentary devise embodied an implied promise of the devisee to abide by the restrictions to which the devise was subject. See: *Mayo v. Dearborn*, 131 Me. 455, 457, 163 A. 779 (1933).

3. Most Courts now tend to refer to the classic equitable servitude situation (in which land conveyed is restricted for the benefit of land retained) and the two basic exceptions to it as if they were three independent viable classes of enforceable equitable servitudes. *Korn v. Campbell*, 192 N.Y. 490, 85 N.E. 687 (1908). See, generally, Annot., 51 A.L.R.3d 556.

4. Since we base our decision on this principle of law defeating intent, we have no occasion to evaluate whether Maria E. Fuller actually

Plainly, Maria E. Fuller did not impose the conditions of her devise for the benefit of land retained by her. The record reveals no allegation or proof that the testatrix was seized of any land other than the lot which she attempted to restrict, and her interest in that lot clearly terminated at the time of the attempted imposition of the servitude, namely, upon her death. It is equally clear that the asserted restrictions neither arose out of a division of the testatrix's land into several lots in pursuance of an overall building scheme nor resulted from a covenant between parties owning contiguous lands to promote their mutual advantage.

■ Indeed, defendant Gingras does not contend on appeal that the restrictions imposed by Maria E. Fuller fall within any of the above-described traditional classes of enforceable equitable servitudes. Rather, he asks us to engraft upon the traditional categories a fourth class of enforceable equitable servitudes recognized in a few recent decisions.

This fourth class, evolved by analogy to the rights of a third party beneficiary of a contract, has been described by a New York Court as

". . . allowing a donee beneficiary to recover upon a promise intended for his benefit *without a showing of any additional element.*" (emphasis supplied) *Zamiarski v. Kozial,* 18 A.D.2d 297, 239 N.Y.S.2d 221, 225 (1963)

The question, therefore, (assuming the existence of the requisite notice) becomes ". . . solely [one] of intention" (p. 225) so that

". . . an owner of neighboring land, for whose benefit a restrictive covenant is imposed by a grantor, may enforce the covenant as a third-party beneficiary *despite the absence of any privity of estate between the grantor and the neighbor.*" (emphasis supplied) (p. 223)

See also: *Mariner v. Rohanna,* 371 Pa. 615, 92 A.2d 219 (1952); *Appeal of J. C. Grille, Inc.,* 181 Pa.Super. 456, 124 A.2d 659 (1956); Annot., 51 A.L.R.3d 556 § 10.

We refuse to establish such an additional (fourth) category of enforceable equitable servitudes since to do so would require us to repudiate our recent decision in *Fitanides v. Holman,* Me., 310 A.2d 65 (1973) in which we reaffirmed that a restriction which benefits only land owned by a stranger to the transaction purportedly creating the restriction will not be enforced as an equitable servitude.

■ Stare decisis must operate with plenary force in the law of real property to maintain the certainty and predictability which Courts, traditionally, have made the benchmark of this area of jurisprudence and upon which, accordingly, the public has been induced to place strong reliance. See: *United States v. Maine,* 420 U.S. 515, 527, 528, 95 S.Ct. 1155, 43 L.Ed.2d 363, n. 9 (1975). We depart, therefore, from a real property policy long avowed by us, and still followed by the great majority of other Courts, only when the most compelling of reasons demand change.

Here, we find no such compelling necessity.

The entry is:

*Appeal denied.*

All Justices concurring.

---

intended to impose restrictions on successors in title to Augusta General Hospital.

In any event, here, the question of intent could not properly be decided on motion for summary judgment. The instrument in question presents ambiguity on its face necessitating resort to extrinsic evidence concerning conditions existing at the time of the will's execution, *C. Company v. City of Westbrook,* Me., 269 A.2d 307, 309 (1970). It thus raises a genuine issue of material fact precluding the granting of summary judgment; *Company,* Me., 341 A.2d 8 (1975). See also: Rule 56 M.R.C.P.; *Soper v. St. Regis Paper Company,* Me., 341 A.2d 8 (1975). *Zamiarski v. Kozial,* 18 A.D.2d 297, 239 N.Y.S.2d 221, 223 (1963).