JEDEDIAH HERRICK *versus* MERCY HOPKINS & *al.*

Every call in the description of the premises, in a deed, must be answered if it can be done; and the intention of the parties is to be sought by looking at the whole, and none is to be rejected, if all the parts can stand consistently together.

If there be a precise and perfect description, showing that the parties actually located the land upon the earth, and another, general in its terms, and they cannot be reconciled with each other, the latter should yield to the former.

But where there is inaccuracy or deficiency in the particular description, the one which is general often becomes important, and renders that clear, which, without it, would be obscure and uncertain.

WRIT of entry. At the trial, before TENNEY J. after the evidence was before the jury, a nonsuit was ordered, by consent of parties, on the ground, that by the true construction of the deed, Hamlin to Sheppard, the premises in controversy belonged to the tenants. If that construction was erroneous, the nonsuit was to be set aside, and the action stand for trial. The material parts of the deeds are given in the opinion of the Court. A plan was exhibited, and remarks made in reference to it at the argument, but none appears with the papers.

*J. Appleton* argued for the demandant; and in support of his views, cited 11 Pick. 193; Sheph. Touch. 87; 3 Pick. 272; 7 Greenl. 220; 20 Maine R. 61; 5 Greenl. 482; 5 Mason, 410.

*Kent* and *H. Hamlin* argued for the tenant, citing 17 Maine R. 123; 1 Har. & Mc. H. 139; 4 Monr. 32; 1 Met. & P. Dig. 479; 5 N. H. R. 450; 7 Wheat. 10; 3 Sumn. 170; 8 Greenl. 85; 6 Cowen, 544, note; 3 Kent, 480; 20 Wend. 149; 7 Cowen, 723; 11 Conn. R. 163; 13 Pick. 145; 5 Pick. 135; 3 Fairf. 326; 3 Greenl. 398; 7 Verm. R. 511; 5 Greenl. 486.

The opinion of the Court was drawn up by

TENNEY J. — The land in controversy is a small portion of lot No. 17, as surveyed by E. Ballard in 1796, in the town of Hampden, conveyed by the Commonwealth of Massachusetts

to Perez Hamlin. Hamlin conveyed to John Sheppard, (under whom, through several mesne conveyances the defendants claim,) a parcel thereof by deed dated April 3, 1797, and is described as follows.— " Begining at a cedar stake with stones about it, thence running South 43° West, 17 rods to a cedar stake with stones about it, thence South 56° East, 15 rods to a cedar stake at the bank of Penobscot River, thence North 42° East, or as the river runs, about 11 rods, thence North 38° West, 15 rods to the first mentioned bounds, and contains, by estimation, about one acre and one third of an acre, and is bounded Northerly on Kennebec road, Easterly on Penobscot River, and Southerly and Westerly on the said Perez Hamlin's land." The residue of that part of lot No 17 in which the land conveyed to Sheppard is situated, was subsequently conveyed by Hamlin, to which conveyance, the demandant traces back his title.

In the first count in the writ, which is the only one relied upon, the demandant claims to be the owner of a peice of land " beginning at a stake and stones on the bank of Penobscot River, thence North 42° East, or as the river runs, about 11 rods, thence North 38° West, 15 rods to a stake on the Kennebec road, so called, as laid out by Ballard, thence East 7° South, by said Kennebec road to Penobscot river, thence by Penobscot River Southerly to Daniel Emery's land, thence by said Emery's land, North 56° West, to the place of beginning." This claim is made upon the ground that the land conveyed to Sheppard extended only to the *bank* of the river, and that it left also a gore at the North East corner of lot No. 17, bounded Northerly on the Kennebec road, and Easterly by the Penobscot river.

It is insisted by the demandant's counsel, that the land conveyed to Sheppard is particularly described by lines of specific lengths and courses, and so that its location cannot be mistaken, and although there is a general description afterwards, bounding the land on the Kennebec road and Penobscot river, yet as this cannot be reconciled with the first it must yield thereto.

It is a familiar principle, that every call in the description of the premises in a deed must be answered, if it can be done. The intention of the parties is to be sought by looking at the whole, and none is to be rejected, if all the parts can stand consistently together. If however there be a precise and perfect description, showing, that the parties actually located the land upon the earth, and another, which is general in its terms, and they cannot be reconciled with each other, the latter may yield to the former. But where there is inaccuracy or deficiency in the particular description the one which is general often becomes important, and renders that clear, which without it would be obscure and uncertain.

In the deed to Sheppard, the length and direction of the first, second and fourth lines are precisely given ; three of the four corners have monuments of cedar stakes, and two of these with stones about them. No monument is given as the termination of the third line, till the fourth line is laid down in the deed, and still, as the last or fourth line is of a given length and course, and ends at a point which was fixed and certain, the third line must have terminated at a place, existing distinctly in the minds of the parties. But the language used implies, that the length and course of the third line were uncertain, for the course is in the alternative, North 42⁰ East, or *as the river runs, about* 11 rods, very different from the precise terms used in reference to the other lines. If this third line is limited to 11 rods, and was not intended to deviate from the course of North 42⁰ East, there are words, which are entirely destitute of meaning, which we cannot admit, if other points of the description will give them effect. This is not a case where there are two distinct descriptions, the whole is necessary to make one, which is perfect ; and when taken together it is not perceived that there is any such inconsistency as to make it necessary to exclude the effect of the latter part. A monument at the termination of any particular line, may as well be inserted in one place as another, in the description, provided it is clearly expressed. The monument at the end of the third line is the Kennebec road, and that only. This

line was probably not run as the others were, perhaps on account of the state of the river at that season of the year. And as the point where that line was to end is distinctly indicated, it was useless to run it, in order to know in what manner to locate the land to be conveyed.

The course of the last line in the description is certainly widely different from that of the Kennebec road, as described in the writ, the surveyor's report, or the deed from the Commonwealth to Hamlin, under whom both parties claim ; but monuments must control courses and distances even where the latter purport to be given with perfect precision, but in this case, the parties must have understood, that both were uncertain. How such a mistake in the course of the last line should have occurred, it is not necessary to inquire ; but when we see, that the course of the Kennebec road from the river was North 83° West, and the last line in the description was North 38° West, it is not unnatural to suppose, that the scrivener reversed the figures indicating the course, writing it 38 instead of 83. The construction adopted is fortified by the fact that Hamlin in his subsequent conveyance of the residue of the lot No. 17 excepted the land conveyed to Sheppard, being in the North East corner thereof.

The parties did not agree as to the location of the Kennebec road, referred to in the deed to Sheppard, and the Court are to draw such inferences from the evidence in that particular as a jury would be authorized to do ; and the whole evidence in the case, documentary and parol, all tends to the same point, and clearly established the fact, that the Kennebec road was located at the time of the original survey between lots Nos. 17 and 18, taking half from one and half from the other, on a straight course from the head of the lots to the river ; and that the road so located is the same referred to in the deed to Sheppard and in the demandant's writ.

Does the language in the deed from Hamlin to John Sheppard embrace the land between the bank of the Penobscot river and the river itself ? It is well settled, that when land is bounded " on a river, by a river, or to a river," where the tide ebbs

and flows, the flats are embraced. But where the boundary is "by the bank of the river" it may be otherwise, often depending upon other language used in connection. The second line mentioned in the description of Perez Hamlin's deed to Sheppard runs to a cedar stake " at the bank of Penobscot river, thence *as the river runs,* &c., and the parcel is afterwards represented as bounded on the East by Penobscot river. It is manifest from the whole, that the land *below* the *bank* was intended to be conveyed, and that the language " at the bank" was used synonymously with the term at, by or on the river. The land was on a navigable river, which probably enhanced the value of it; and it is improbable therefore that the parties should have referred to that as the Eastern boundary without fully understanding the import of the language.

*Nonsuit confirmed.*