THOMAS C. SMITH *versns* PAUL LADD.

In two deeds made at different periods to one grantee, the following reservations were included, viz. : — In the first deed, "I do reserve a driftway from the county road, on to the east end of said lot, &c., and another driftway on to the west end of said lot, where it will best convene me;" and in the second deed, "I do reserve a county road across, &c., and a driftway from that county road to get on to the west end of said lot in the most convenient place to accommodate me," &c.

*Held*, that the reservation in each deed should be treated as an exception, and for the benefit of the portion of the lot remaining in the grantor, and as appurtenant to that portion.

The right of way thus reserved was not limited to foot passengers, but extended to passage for teams and all such uses as might be convenient in the occupation and improvement of the land.

A "driftway" is defined to be a "common way for driving cattle."

ON REPORT from *Nisi Prius*, CUTTING, J., presiding.

This was an action of TRESPASS *quare clausum* for breaking and entering the plaintiff's close situated in Fayette, and being the north part of lot No. 41, in said town. The defendant owned the south part of the same lot. Both claimed title from the same grantor, through sundry mesne conveyances. The defendant claimed a right of way over a portion of the plaintiff's premises by virtue of certain reservations in the deeds of their common grantor, and on this right rested his defence. The language of the reservations in the deeds, and other facts of the case, appear in the opinion of the Court.

It was agreed, that upon so much of the testimony as is legally admissible, the Court of law were to draw such inferences as a jury would be authorized to draw, and to enter a nonsuit or default as the law might require. If a default is entered, the Court is to appoint a referee to assess the damages, unless the parties agree upon the amount for which judgment is to be rendered. If the defendant is adjudged to have a right of way across plaintiff's land, plaintiff is to become nonsuit; otherwise, the defendant is to be defaulted.

*E. Kempton, jr.*, for plaintiff, contended : —

1. The defendant has no right of way across the plaintiff's close by reservation and grant.

The reservation in the deed of October 8, 1812, of the 18 rod strip from Judkins to Jonathan Clough was merely a personal right, and not assignable. Also, the reservation in the deed of March 17, 1813, from Judkins to Stephen B. Clough, of the north part, was of the same character, and was not assignable. *Wadsworth* v. *Smith,* 11 Maine, 278; *Lord* v. *Lord,* 12 Maine, 88.

These rights of way, thus reserved, are so strictly and exclusively personal rights, and not appendant or annexed to the estate, that in the former case Judkins could not have taken another person in company with him, and, in the latter case, no one but Jonathan Clough. 3 Kent's Com., 419.

If these words were doubtful or inapt or capable of two constructions, the Court will adopt that construction which will operate most strongly against the grantor. *Adams* v. *Frothingham,* 3 Mass. 352; *Worthington* v. *Hylyer,* 4 Mass. 196.

Where the intention of the parties can be discovered by the deed, the Court will carry that intention into effect, if it can be done consistently with law. *Bridge* v. *Wellington,* 1 Mass. 219, 227.

In the construction of a deed, the Court will take into consideration the circumstances attending the transaction, and the particular situation of the parties, the state of the country, and of the thing granted or reserved at the time, in order to ascertain the intent of the parties. *Adams* v. *Frothingham,* above cited.

2. The defendant has acquired no right of way by prescription. Nothing can be claimed by prescription which owes its origin to matter of record. For the law allows prescription only in supply of the loss of a grant. Cruise on Real property, Title 31, c. 1, § § 8, 14.

It is apparent and certain that the claim of defendant of the right of way across plaintiff's land owes its origin to matter of record, to wit, the reservations by Judkins, and grants from him, through others to the defendant. If he has failed to show a good title by virtue of grant and by record evidence, he cannot now set up title by prescription, this being

inconsistent with the former. *Lang* v. *Lunt,* 37 Maine, 69; *Addington* v. *Clade,* 2 Black. 989.

In the case of *Addington* v. *Clade,* which was trespass *quare clausum,* the defendant justified under a prescriptive right to have and use the common of pasture.

The plaintiff traversed the right of common by prescription, and produced two ancient charters without date, containing a grant of common.

The Judge at *Nisi Prius,* being of opinion that the grants were inconsistent with the plea of prescription, a verdict was given for the plaintiff.

Upon motion for a new trial, it was urged for the defendant, that these grants might only be in confirmation of an antecedent prescriptive right, and these were not inconsistent with it.

The full Court was of opinion, that these grants might either be before the time of memory, or else they might have been only in confirmation of a prior right, in neither of which cases would they have been inconsistent with a plea of prescription.

No such argument can be urged for the defendant in this case. The grants are of recent date, showing that they are within the time of memory; and all the testimony proves, conclusively, that this grant was not in confirmation of a prior right. Every prescription must have a continued and peaceable usage and enjoyment. For, if repeated usage cannot be proved, the prescription fails. Cruise, Tit. 31, c. 1, § § 19, 26.

The use or possession on which such title is founded must be uninterrupted, and adverse or of a nature to indicate that it is claimed as a right, and not the effect of indulgence, or any compact short of a grant. *Gayetty* v. *Bethune,* 14 Mass. 49, 53; *Odiorne* v. *Wade,* 5 Pick. 421; *Sumner* v. *Tileston,* 7 Pick. 198.

3. The defendant has not this right of way by estoppel. Counsel on this point cited *Eastman* v. *Cooper,* 15 Pick. 276; *Adams* v. *Moore,* 7 Maine, 86.

*S. Lancaster,* for defendant.

The legal effect of these two deeds was to subject these

two strips to the servitude of this passage-way, and to annex it as an easement to the west end of the defendant's lot.

This the said Judkins had a perfect right to do, he then owning the whole of lot No. 41. It then became an easement appurtenant to the west end of the lot now owned by defendant, and still remains so, unless it has in some way been lost or extinguished. *White* v. *Crawford*, 10 Mass. 183.

It has never been released or extinguished. On the contrary, it has always been used as belonging to the west end of defendant's lot from the time of its first creation in 1812 and 1813, to the present time.

The law contended for by defendant as governing this case is this, that this right of way was created for the benefit of what is now the defendant's west end, by the reservations in the deeds from Stephen B. Judkins to Jonathan Clough and Stephen B. Clough, respectively, of the 18 rod and 55 rod strips; the first of October 8, 1812, the second, March 17, 1813; and being so created and established, was conveyed to Samuel Wadleigh by Stephen B. Judkins by his deed of April 10, 1824, and would have been, even without an express grant; this doctrine is fully supported by the authority cited. *White* v. *Crawford*, 10 Mass. 183, and by *Bowen & al.* v. *Conner*, 6 Cush. 132.

And being so created and conveyed, it has come down to the defendant through the intermediate conveyances, and is now rightfully and legally in him, and would have been so without being specifically granted. *Mendell & al:* v. *Delano*, 7 Met. 178.

Again, the original deeds from Stephen B. Judkins of the 18 rod and the 55 rod strips, through which the plaintiff traces his title, having reservations in them of this passage-way, bind not only the original grantees but those claiming under them. *Mendell & al.* v. *Conner*, 6 Cush. 137.

The plaintiff then is estopped to claim this right of a passage-way just as much as the original grantees of Stephen B. Judkins would have been.

Smith *v.* Ladd.

TENNEY, C. J.—Stephen B. Judkins was formerly the owner of the whole lot No. 41, and under him both parties claim. On Oct. 8, 1812, he conveyed a strip through the centre of the lot from east to west eighteen rods in width, to Jonathan Clough, leaving a parcel of the same lot on each side; and on March 17, 1813, he conveyed to Stephen B. Clough, the whole of that part of lot No. 41, lying to the north of that previously conveyed. Through several mesne conveyances, the plaintiff derived title to these two strips of land conveyed by Stephen B. Judkins.

In the first of the deeds mentioned is a reservation or exception in these words,—"I do reserve a driftway from the county road, on to the east end of said lot, on to the south part, and across to the north part, in the most convenient place, and another driftway on to the west end of said lot, where it will best convene me. And I do reserve the county road, that is across said land, and you are to have the privilege to come on to my land to get on to the east end of yours, if it is needed or thought convenient;" and in the second of those deeds is the following, "I do reserve a county road across said land and a driftway from that county road to get on to the west end of said lot in the most convenient place to accommodate me and Jonathan Clough."

On April 10, 1824, Stephen B. Judkins conveyed the remainder of lot No. 41, being the southerly portion thereof, to Samuel Wadley, who on August 23, 1834, conveyed the same to James L. Williams. On April 18, 1835, James L. Williams conveyed the same to John B. Williams, from whom it passed to the defendant by deed, dated Oct. 3, 1835.

The intention of the parties to the deeds containing the reservations mentioned is too manifest to be misunderstood. They do not purport to be of the right of way *in gross* to the grantor, and to him only. The county road is mentioned as reserved, and the driftway is to allow of general access on to the two ends of lot No. 41, from that road. The convenience and necessity of this way was as great to subsequent owners of the part remaining as to the original proprietor.

As Jonathan Clough was the owner of the strip, 18 rods in width, at the time the north strip was conveyed to Stephen B. Clough, it was certainly proper that the right of way across the latter to the road should be secured to the proprietor of the former, especially as such right was granted partially at least in the conveyance originally made to Jonathan Clough.

The right of passage in one deed was where it would best convene the grantor, and in the other, in the most convenient place to accommodate the grantor and Jonathan Clough. This language cannot with propriety be limited in its construction, so as to confine the right of the driftway to the grantor and Jonathan Clough, but obviously has reference to the place of passage.

We cannot doubt that the reservation in each deed should be treated as an exception, and for the benefit of the portion of the lot which remained in the grantor, and they were appurtenant to that portion. Being so, they were appendages thereto, and passed with the land itself when it was conveyed, according to the principles which are treated as well settled in the case of *Winthrop* v. *Fairbanks,* (*ante page* 307.)

It is contended that if the right of way reserved was appurtenant to the land, the title of which remained in the grantor, that this right could not extend further than to entitle the owners to the privilege of passing on foot. The language used must have a reasonable construction given to it, under all the facts and circumstances of the case. Nothing appears, by which we can infer that the right was designed to be thus restricted. A passage for teams at that time would be as necessary and as convenient in making the land profitable as for foot passengers. Indeed, the word itself in the deeds used to define the right has a more extended signification. "Driftway" is defined by lexicographers to be a "common way for driving cattle." The parties evidently intended the privilege to extend to all such uses as might be convenient in the occupation and improvement of the land to be benefited.                              *Plaintiff nonsuit.*

RICE, APPLETON, CUTTING and MAY, J. J., concurred.