GEORGE H. LITTLEFIELD *vs.* CHANDLER E. HILTON.

York.   Opinion June 30, 1913.

*Construction. Deed. Description. Homestead. Intention. Title. Trespass.*

1. It is the general governing principle in the exposition of deeds and other instruments that effect should be given to the legal intention of the parties.
2. That in ascertaining that intention, the entire instrument is to be regarded so that every word shall, if possible, have effect and none be rejected.
3. If by any consistent construction the different parts of the deed are reconciled and a reasonable effect given to all its terms, such construction should be adopted.
4. It is an ancient principle of the common law that when the words used in a deed are not sufficiently precise to fix its meaning beyond every uncertainty, the words are to be taken most strongly against the grantor.

On report.   Judgment for plaintiff for five dollars.

This is an action of trespass quare clausum to recover damages for breaking and entering the plaintiff's close situate in Wells, in said county, and cutting and carrying away certain growing trees. The only question presented was the title to the locus in question. The defendant pleaded the general issue and filed a brief statement denying the plaintiff's title and claiming title in himself. Upon the conclusion of the evidence, the case was reported to the Law Court for determination upon so much of the evidence as is legally admissible.

The case is stated in the opinion.

*Leroy Haley,* for plaintiff.

*Mathews & Stevens, and Cleaves, Waterhouse & Emery,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, KING, BIRD, HANSON, JJ.

KING, J.   An action of trespass quare clausum reported to this court.   The title to the locus is the only question now presented.

By a warranty deed, dated April 6, 1850, Frederick Hilton conveyed to his son Edward Hilton, Jr., certain real estate described in the deed as follows: "All of my homestead farm situated in said Wells, together with all of the buildings standing thereon, bounded as follows, viz.: On the north by land owned by the heirs of Joseph Littlefield late of Wells, deceased, and the heirs of Josiah Littlefield, late of Wells, deceased, on the northwest by land of William Hilton and John Hilton and on the southwest by land of John Hilton and Daniel Baston, and on the southeast by Daniel Stuart and John Hilton's land, containing about fifty acres be it more or less, and also one other lot of land laying out in the commons, bounded as follows, viz., on the Baston road, so called, on the north and northwest by land of Nahum Littlefield and James Hilton, on the south by land of Nathaniel Hilton, containing twenty acres be it more or less, and also one other lot of wood land, situated in the town of York, bounded as follows, viz., (here follows a description by metes and bounds of that lot containing about fifteen acres).

By deed, dated April 11, 1891, Edward Hilton conveyed to his son Alvirda F. Hilton certain real estate described in the deed as follows: "Certain real estate now occupied owned and improved by me situated in Wells, including and conveying by this deed the land and buildings therein embraced; in the following described title deeds made to me as 'Edward Hilton, Jr.' Viz.: My homestead estate situated in said Wells described in a deed from my father Frederick Hilton deed, dated April 6th, A. D. 1850 excluding a parcel of wood land, in York, which is specified in said deed, which is recorded in York County Registry of Deeds in Book 44 on pages 44 and 45, to be referred to, containing 70 acres more or less, with buildings thereon.

"Also a lot of tillage land containing 6 acres, more or less in said Wells deeded to me by said Frederick, August 21st, A. D. 1852, recorded in Book 225, page 43 of said Registry.

"Also a lot of field land containing 23 acres more or less, deeded to me by Daniel and Jacob A. Stuart by deed dated June 30, A. D. 1864, recorded in Book 288 on page 457 of said Registry to be referred to.

"Also a piece of mowing land in said Wells containing two (2) acres more or less, deeded to me by Joshua F. Hilton by deed dated

January, 1871, acknowledged June 2, 1871. Recorded in Book 351 on page 331 of said Registry; in all of said original deeds, I was then known and properly called 'Edwin Hilton, Jr.,' now being senior."

From the report it appears that it was conceded at the trial that the locus where the alleged trespass was committed is the same tract "laying out in the commons" described as the second lot conveyed in the deed of April 6, 1850, from Frederick Hilton to Edward Hilton, Jr., and the plaintiff claims title to that lot under a deed from Alvirda F. Hilton to him dated November 4, 1909, in which that lot was described as conveyed.

The controlling question presented is, whether the title to the lot in question passed from Edward Hilton to his son Alvirda F. Hilton by the deed of April 11, 1891, above referred to, for, if so, the plaintiff appears to have the better title to the locus.

The defendant contends that only the homestead of Edward Hilton, so far as the property described in the deed to him from his father in 1850 is involved, was conveyed by his deed to Alvirda F. Hilton of April 11, 1891, urging in support of that contention that the words used in the deed "My homestead estate situated in said Wells," limit the conveyance in this particular to the homestead only. On the other hand the plaintiff claims that the words "homestead estate" are comprehensive enough to include the lot in question with the homestead proper, especially if that lot had been used in connection with the homestead, and he introduced evidence tending to show that fact; and he also claims that a reasonable and consistent construction of the deed is, that it conveyed all the real estate then owned by the grantor in Wells, the title to which he acquired under the deed referred to of April 6, 1850, and therefore, included both the homestead and the lot laying out in the commons.

But for the words used, "my homestead situated in said Wells," it would have been altogether plain that the deed in question would have conveyed all the grantor's real estate in Wells, which he acquired by the deed therein referred to from his father to him, dated April 6, 1850. Because of the use of those words must the conveyance be restricted to the homestead only? We think not.

It is the general governing principle in the exposition of deeds and other instruments, that effect should be given to the legal inten-

tion of the parties, and that in ascertaining that intention the entire instrument is to be regarded so that every word shall, if possible, have effect, and none be rejected. If by any consistent construction the different parts of the deed are reconciled, and a reasonable effect given to all its terms, such construction should be adopted. And it is also an ancient principle of the common law, that when the words used in a deed are not sufficiently precise to fix its meaning beyond every uncertainty, the words are to be taken most strongly against the grantor.

It is important to consider that the method adopted in drafting the deed in question was to designate the lands thereby conveyed only by express reference to the title deeds whereby they were conveyed to the grantor, and without adding any particular description by metes and bounds. The words used at the beginning of the part of the deed designating the property conveyed, "certain real estate now occupied owned and improved by me situated in said Wells, *including and conveying by this deed the land and buildings therein embraced in the following described title deeds made to me,*" reasonably indicate an intention to convey all and the same lands in Wells that the grantor acquired by the certain title deeds to be specifically referred to; and when those title deeds were referred to no exception of any lands included therein was made, except the wood lot in the town of York. And this exception, as expressed in the deed, "excluding a parcel of wood land, in York, *which is specified in said deed,*" plainly indicates the grantor's understanding that the deed he was then executing covered all the property conveyed to him by his father's deed of 1850, except the wood lot in York. If it was not intended that the deed should convey the lot out in the commons, without doubt it would have been excepted as the York lot was.

Again, the acreage of the land conveyed, as specified in the deed, is "70 acres more or less," and this is in exact accord with what should have been stated if both lots were included in the conveyance, but it is an entirely erroneous statement if only the homestead was conveyed, for the homestead proper is described in the deed of 1850 as containing "about fifty acres more or less," and the lot out in the commons "twenty acres be it more or less."

Nor do we think the use of the words, "My homestead estate situated in said Wells," is materially inconsistent with the conclusion that both the homestead proper and the twenty acre wood lot out in the commons were intended to be embraced in the language used in the deed to designate the property conveyed.

We do not here undertake to define the precise meaning of the words "homestead estate" as used in the deed. It is undoubtedly a term having a broader signification than "homestead." And it may not be as limited in meaning as "homestead farm." Shaw, C. J., in *Taylor* v. *Mixter*, 11 Pick., 341, 346, and also in *Aldrich* v. *Gaskill*, 10 Cush., 151, 158, strongly intimated that "homestead" might include land not contiguous to that whereon the dwelling-house is located, if intimately connected and used with it, and that "homestead farm" might have a broader signification than the word "homestead" used alone. Whether the expression "My homestead estate situated in said Wells" has a significance broad enough to include both the homestead lot proper and the other lot out in the commons if used, as claimed, in connection with the homestead, we do not here decide, for it is not necessary. The use of that expression does not necessarily exclude the idea that the other lot was included, and it is reasonably reconcilable with that construction; on the other hand, a construction that limits the conveyance, in this particular, to the homestead proper only, and excludes the other lot in Wells "laying out in the commons," does not give effect to what seems to have been the intention of the parties, nor does it give the effect that manifestly should be given to other important recitals in the deed. The other construction, whereby the deed is held to convey all the land the grantor owned in Wells that he acquired by the deed of 1850 which was expressly referred to, best comports with the plain and ordinary meaning of the language used in the deed and gives effect to all its terms.

It is therefore the opinion of the court that the plaintiff has the better title to the locus. It is stipulated in the report that the damage for the alleged trespass was five dollars, accordingly the entry will be,

*Judgment for plaintiff for five dollars.*