**BATES MANUFACTURING COMPANY**

v.

**FRANKLIN COMPANY et al.**

Supreme Judicial Court of Maine.

March 25, 1966.

Pierce, Atwood, Scribner, Allen & Mc-Kusick, by Gerald M. Amero, and Vincent L. McKusick, Portland, for plaintiff.

Linnell, Choate & Webber, by G. Curtis Webber, Auburn, for defendants.

Before WILLIAMSON, C. J., and MARDEN, RUDMAN and DUFRESNE, JJ.

WILLIAMSON, Chief Justice.

The plaintiff Bates Manufacturing Company (hereinafter called Bates) sought and obtained a judgment forever barring certain restrictions on the Triangle Lot, so-called, as a cloud on title. Of the three defendants only Franklin Company (hereinafter called Franklin) appeals.

The facts are not in dispute. By indenture in 1862 Franklin conveyed to Androscoggin Mills, predecessor in title to Bates, the Triangle Lot, so-called, being part of a larger lot, in Lewiston, subject to the following restriction:

"* * * that so much of the said lot as is southerly of said street last mentioned (now Locust Street) shall be kept open as a Park and no buildings be erected thereon without the consent of the party of the first part (Franklin * * *) and said party of the first part also reserving the right to construct a canal or feeder through such Park to any mills or buildings hereafter to be erected on their lands, lying easterly of Lisbon Street provided and on condition that such canal or feeder

be constructed so far beneath the surface of the land and so effectually and properly covered as to admit of cultivation of the soil over and above and along such canal or feeder."

The Triangle Lot is bounded on the north by Locust Street, on the east by Lisbon Street running at right angles to Locust Street, on the west by Canal Street, and is approximately 127 feet by 223 feet by 256 feet. The remainder of the lot lies northerly of the Triangle Lot and is bounded on the south by Locust Street and on the east by Lisbon Street.

In 1862 when the conveyance was made, Franklin owned open and undeveloped land bounded on the west by Lisbon Street, across from the Triangle Lot, and extending easterly to Bates Street. Franklin over the years and before December 1, 1950 conveyed all of this land with the exception of one lot on Bates Street with the westerly lot line about 600 feet from Lisbon Street. There were no reservations upon the Triangle Lot in the deeds given by Franklin over the years.

Franklin in 1862 was engaged in the development and sale of mill properties and in the construction of mills and canals. On the land immediately north of Locust Street "in 1862 were certain boarding houses intended to be occupied by 500 to 600 boarders and which houses were subsequently so occupied. Presently this block is occupied by commercial establishments including a drive-in restaurant and a service station." The area east of Lisbon Street "today * * * is heavily commercialized and occupied by such establishments as a branch bank, supermarket and parking lot, theater, trucking company and variety store." [The quotations are from admitted allegations of the complaint].

On December 1, 1950 Franklin and Bates entered into an agreement under which the Triangle Lot was leased in part for use as a gasoline station for a term ending November 30, 1953. A new agreement dated December 1, 1953 reads in part:

"1. Franklin agrees to join as a lessor in the proposed leases to Socony-Vacuum Oil Company, Incorporated and Androscoggin Diner Co., respectively, and to waive its rights under the restriction contained in the deed above described (the 1862 deed) and to consent that buildings may be erected and/or maintained on the restricted premises as provided in said proposed leases, provided that such waiver and consent shall be effective only so long as said leases or either of them shall remain in full force and effect, including the period of any extension or renewal of the term of either lease if the same shall be extended or renewed by mutual consent of the parties hereto; and Bates agrees that, upon and after termination of said leases for any reason whatsoever, Franklin shall again be entitled to require that the portion of the lot described in the aforesaid deed which is southerly of said Locust Street be kept open as a park and that no buildings shall be erected thereon without consent of Franklin, and Franklin shall have the right to construct a canal or feeder through such park, all as set forth in the aforesaid restriction, as if this Agreement and said leases had never been executed."

\*     \*     \*     \*     \*     \*

"4. Bates agrees that it will not act without the concurrence of Franklin in negotiating with any person relative to the renewal or the extension of the term of either of the proposed leases or relative to any other matter involving either lease or the occupancy of said premises.

"5. Franklin agrees that, if at the conclusion of the term of either of said proposed leases, including any extension thereof, Franklin requires that the demised premises be kept open as a park and that the filling station erected thereon be removed therefrom, it will pay

one-half (½) of the cost of such removal."

The parties are in agreement that "Since 1862, technological advances, such as the advent of electricity, have made the construction and use of canals as a means of transmitting motive power uneconomical and extremely impractical." The easement for the construction of a canal through the Triangle Lot no longer serves any useful purpose and has come to an end. It is sufficient to say that the easement has been abandoned by Franklin.

The controversy centers about the park. The Justice below gave sentence of death on two grounds: First, that the park restriction was incidental to the easement for a canal, and hence ended with it; and second, that if not incidental, then the application of the change of neighborhood doctrine destroyed the restriction. Further, the Justice considered the 1953 agreement conferred no more rights on Franklin than it had under the original restriction, and did not preclude or estop Bates from gaining the desired equitable relief.

■ In our view the restriction with reference to the use of the Triangle Lot as a park is not incidental to the reservation with reference to the canal. The 1862 deed carefully provided for construction of a canal without interference with the use of the Triangle Lot as a park. The "park" and "canal" provisions are separate and distinct. The use for the one purpose does not prevent the use for the other. The Triangle Lot as a park plainly held value in 1862, in no way related to its use as a right of way for a canal.

As a second ground of decision the Justice held the park restriction, assuming it was not incidental to the canal provision, ended by reason of changes in the neighborhood. Our problem arises not in the law but in its application to the facts.

■ The governing principle of law was well stated by the Rhode Island Court in Hill v. Ogrodnik, 83 R.I. 138, 113 A.2d 734, 737, 114 A.2d 398, as follows:

"Although expressed by different courts in varying language the rule supported by the great weight of authority now is substantially to the same effect, namely, that equity will grant affirmative relief against restrictive covenants by way of removal as a cloud on title only when it clearly appears that the change in the character of the neighborhood in the immediate vicinity of the restricted land has been so radical and permanent as to render perpetuation of the restriction plainly unjust because its original purpose can no longer be accomplished."

Caron v. Margolin, 128 Me. 339, 147 A. 419; McArthur v. Hood Rubber Co., 221 Mass. 372, 109 N.E. 162; 2 American Law of Property § 9.22; Restatement, Property § 564.

We find no evidence in the record of a change in the character of the neighborhood sufficient to warrant the destruction by the court of the park restriction.

In 1862 the Franklin property east of Lisbon Street to which the restrictions in the deed were appurtenant was open land. The anticipated use of the area for mills did not materialize over the years and by 1950 the use was commercial.

There is nothing in the record to suggest that the Triangle Lot was used for any purpose other than as a park or that buildings were built thereon during the 88 years from 1862 to 1950. The change from open land to a commercial area thus brought no change in the use of the Triangle Lot.

Franklin, as we have seen, now owns only one lot in the area owned in 1862 east of Lisbon Street. The money value to Franklin of the park restriction may have been small in 1862 for the entire tract and in 1965 for the lot owned. This, however, is not a sufficient reason to destroy the restriction on the ground of change in neighborhood.

The Triangle Lot is indeed small in size as we ordinarily measure parks. It was, however, considered useful for park purposes in 1862. Who can say that it has not retained value for such purposes today in a commercial area? There has been no change in space requirements for a small city park analogous to the change from water power through canals to electric power for the mills.

The 1953 agreement between Bates and Franklin strengthens the position of the latter. No change in the character of the neighborhood has taken place since 1950. The agreement was thus made under present conditions of use of the area.

Under the agreement at the expiration of certain proposed leases Franklin shall again be entitled to require that the Triangle Lot "be kept open as a park and that no buildings shall be erected thereon without its [Franklin] consent." If this provision is said to be no more than a reference to a dead restriction by reason of the inclusion of the canal reservation, we turn to paragraph 5, supra. The parties there make plain beyond doubt that the park restriction has force and life by agreeing to share the cost of removal of any building under certain conditions.

The parties thus in 1953 recognized the existence of the park restriction and modified its terms. We do not breathe life into the 1862 park restriction through estoppel based on the 1953 agreement. We do no more than say that a restriction in existence in 1953 remains alive today as thus modified. Under the circumstances therefore Bates is not entitled to a judgment and injunction which would effectively destroy the 1862 park restriction as so modified as a cloud on title. There is no objection to removal of the canal reservation.

We are not here concerned with, and we express no opinion upon, the rights, if any, of the present owners, other than the defendants, of the land owned by Franklin in 1862 to which the Triangle Lot restrictions were applicable.

The entry will be

Appeal sustained.

WEBBER and TAPLEY, JJ., did not sit.