Robert B. FRIEDLANDER and Ernest F. Friedlander, Trustees

v.

HIRAM RICKER & SONS, INC. and Image, Inc.

Supreme Judicial Court of Maine.

Argued Jan. 13, 1984.

Decided Dec. 13, 1984.

Skelton, Taintor, Abbott & Orestis, Michael R. Poulin (orally), Lewiston, for plaintiff.

Brann & Isaacson, Alfred Frawley (orally), Auburn, for Image, Inc.

Trafton & Matzen, M. Kelly Matzen (orally), Auburn, for Hiram Ricker & Sons, Inc.

Before NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ., and DUFRESNE, A.R.J.

WATHEN, Justice.

The plaintiffs, Robert and Ernest Friedlander, acting in their capacity as trustees,

appeal from summary judgment entered in favor of the defendants by the Superior Court (Androscoggin County). Plaintiffs unsuccessfully sought a judgment declaring a restrictive covenant in a deed to be invalid and unenforceable. Plaintiffs argue on appeal that summary judgment should not have been granted because: (1) a material issue of fact remains as to the intent of the parties to the covenant; and (2) the court failed to determine that the covenant was reasonable in scope and duration. We find no error and we deny the appeal.

## I.

The record before this Court may be summarized as follows: By deed dated February 1, 1963, defendant Hiram Ricker & Sons, Inc. (Ricker) conveyed to the Whiting Milk Company (Whiting) a two-acre parcel of land located on the westerly side of Route 26 in Poland Spring, Maine. Situated on the rear of the lot, was the residential building referred to in the deed as the Campbell Cottage. The deed contains the following language:

*The premises hereby conveyed are to be used as a single family dwelling only.* (Emphasis in original)

Through mesne transfers, plaintiffs now hold title to the Campbell Cottage property in trust. After the original conveyance in 1963, Ricker continued to own land surrounding the Campbell Cottage lot on the westerly side of Route 26, as well as land on the easterly side of the highway. On the land it retained, Ricker operated a convention center including a hotel and various recreational facilities. In 1982, defendant Image, Inc. (Image) purchased the Ricker property and granted Ricker a purchase money mortgage that remains outstanding.

Plaintiffs commenced the present action in 1983 by filing a complaint pursuant to the Uniform Declaratory Judgments Act (14 M.R.S.A. § 5951 *et seq.* (1980)). The complaint sought a declaration that the restrictive covenant was invalid and unenforceable. After responsive pleadings

were filed, plaintiffs moved for summary judgment. Affidavits were filed in support of the motion, by plaintiff Robert Friedlander, and opposing affidavits were filed by Mel Robbins, president of Image, and by Saul Feldman, president of Ricker. After hearing, the Superior Court entered summary judgment against plaintiffs as the moving parties and found the restrictive covenant to be valid and enforceable. From this judgment plaintiffs appeal.

## II.

In granting summary judgment for defendants, the Superior Court found that "[t]he covenant in this case runs with the land and is enforceable by Defendant Image, Inc." Plaintiffs contend that at least a material issue of fact remains whether the parties to the covenant intended that it should run with the land. Ordinarily the issue whether a restrictive covenant was intended to benefit the adjoining land retained by the grantor is determined by an interpretation of the written instrument. The subject covenant offers little assistance in this regard. No reference is made in the covenant to "running with the land", "benefiting the parcel retained by grantors" or binding "heirs, successors and assigns." In such circumstances, where it is necessary to resort to extrinsic evidence, a genuine issue of fact will normally be presented and the granting of summary judgment will be precluded. *See Brown v. Heirs of Fuller*, 347 A.2d 127, 129 n. 4 (Me.1975).

In the present case, the Superior Court found on the basis of the affidavits submitted by defendants that the restrictive covenant was intended to benefit and run with the Ricker land. The court committed no error in coming to this conclusion. On the record before the Superior Court, there was no genuine issue of fact concerning the intent of the parties to the 1963 deed. Defendant Ricker presented the affidavit of its president, Saul Feldman, who attested to the fact that he was a party to the negotiations and that the cove-

nant was included with the intent to benefit the retained land of Ricker. Plaintiffs' sole counter to this assertion is set forth in the affidavit of plaintiff Robert Friedlander, wherein he states:

> Since my father [the principal of Whiting] had just finished negotiating a sale of the Poland Spring Inn Property at the time the Campbell Cottage was conveyed, I believe that the restriction in the Campbell Cottage Deed was simply intended to operate as a personal restrictive covenant to prevent my father or our family from going into competition with Poland Spring Inn from the Campbell Cottage site.

■ The Superior Court correctly concluded that the evidence presented by defendants was unrefuted because the assertions contained in the Friedlander affidavit were inadmissible on grounds of hearsay and lack of personal knowledge. M.R. Civ.P. 56(e); *Richards Realty Co. v. Inhabitants of Castle Hill*, 406 A.2d 412 (Me. 1979).

### III.

■ Finally, plaintiffs contend that "the Superior Court failed to consider an essential and dispositive factor in this case, the reasonableness of the restriction." Plaintiffs fail to appreciate the posture in which this case is presented. Essentially, they are claiming that the covenant is facially invalid on the ground that the breadth of the restriction deprives them of any reasonable economic return. The asserted impact on the present use of the premises as a single family dwelling, when viewed in a vacuum, is insufficient to defeat an otherwise valid restrictive covenant. The constraints of reasonableness that arise from considerations of policy relate to the enforceability of the covenant *in equity* rather than its facial validity. *See Day v. McEwen*, 385 A.2d 790 (Me.1978); *LaGrange v. Datsis*, 142 Me. 48, 46 A.2d 408 (1946); *Roy v. Bolduc*, 140 Me. 103, 34 A.2d 479 (1943). The present action does not seek enforcement against a change in

the use of the premises. Although it is true that a covenant will be enforced *in equity* only if it is reasonable under the circumstances, that same consideration is not present in a suit seeking a declaration of facial validity without any allegation of the use proposed for the premises. Because of the narrow inquiry presented by the subject action, the Superior Court committed no error in declaring the covenant to be valid. The issue of the extent to which a court of equity would grant enforcement, must await further development.

The entry is:

Judgment affirmed.

NICHOLS, VIOLETTE, GLASSMAN and SCOLNIK, JJ., concurring.

DUFRESNE, Active Retired Justice, dissenting.

Robert and Ernest Friedlander, the plaintiff-trustees, pursuant to 14 M.R.S.A. §§ 5953 and 5955, the Uniform Declaratory Judgments Act of Maine, sought to obtain in Superior Court (Androscoggin County) a judgment declaring *unenforceable* a restrictive covenant contained in a deed from the corporate defendant, Hiram Ricker & Sons, Inc. (Ricker) to the plaintiffs' predecessor in title. The Superior Court granted summary judgment against the moving plaintiffs in favor of both defendants, declaring the restrictive covenant *valid and enforceable*. On appeal, the plaintiffs claim error by the Superior Court in finding that there were no unresolved issues of fact and in ruling that the defendants were entitled to a declaratory judgment in their favor as a matter of law. See M.R.Civ.P. 56(c). I note, however, that the presiding justice, in this action sounding exclusively in equity, in no way limited the relief granted the defendants to the validity of the restrictive covenant when viewed only facially as contradistinguished from its validity when considered in terms of enforceability. The declaratory judgment below in favor of the defendants was sweeping in scope and all-embracing in concept, ex-

pressly declaring the validity and enforceability of the restrictive covenant, as it provided that

> [s]ummary judgment be entered in favor of Defendants, it being Declared that the following language in the deed from Hiram Ricker & Sons, Inc. to Whiting Milk Company, dated February 1, 1963, and recorded in the Androscoggin County Registry of Deeds at Book 906, Page 13, *i.e.,* "The premises hereby conveyed are to be used as a single family dwelling only," is a valid and enforceable restriction *and enforceable by Defendants Image, Inc. and Hiram Ricker & Sons, Inc.* (Emphasis mine).

I agree with the presiding justice's denial of the plaintiffs' motion for summary judgment, but believe there was error in his granting affirmative summary judgment in favor of the defendants. I, therefore, respectfully dissent.

### 1. *Undisputed factual background*

By deed dated February 1, 1963, the defendant Ricker conveyed to the Whiting Milk Company (Whiting) a two-acre parcel of land located on the westerly side of Route 26 in Poland Spring, Maine. Standing on the rear of the lot, more than one hundred and forty (140) feet westerly from the westerly line of Route 26, with a right of way for ingress and egress on the northerly side of the plot, was the residential building known as the Campbell Cottage, referred to in the deed as such. The restriction at issue appears in the deed of conveyance in the following terms:

> *The premises hereby conveyed are to be used as a single family dwelling only.* (Emphasis in original).

Through mesne transfers, the plaintiffs now hold title to the Campbell Cottage property in trust. At the time of the Whiting purchase in 1963, Ricker retained and continued to own land surrounding the Campbell Cottage plot on the westerly side of Route 26, as well as land on the easterly side of the highway, where it operated the Poland Spring House as a hotel and convention center, together with a golf course and tennis courts and other recreational facilities. In 1963, following the sale of the Campbell Cottage, Ricker built and operated the Poland Spring Inn as part of its commercial operation. In 1975, however, the Poland Spring House was destroyed by fire and was not rebuilt. In 1982, Ricker's considerable land holdings on both sides of Route 26, which were then being used for the operation of the Inn, two single family dwellings, and diverse recreational facilities, were purchased by the defendant Image, Inc. from the Ricker corporation which took back a purchase money mortgage that is still outstanding.

### 2. *Summary judgment*

On February 18, 1983, the plaintiffs filed their complaint for declaratory judgment respecting the *enforceability vel non* of the restrictive covenant contained in the 1963 deed from Ricker to Whiting. On March 21, 1983, they filed their motion for summary judgment pursuant to M.R.Civ.P. 56(c), which provides in pertinent part as follows:

> Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law ... Summary judgment, when appropriate, may be rendered against the moving party.

Affidavits were filed, in support of the motion, by Robert Friedlander, one of the plaintiffs, and in opposition thereto, by Mel Robbins, president of Image, and by Saul Feldman, president of Ricker. After a nontestimonial hearing, the Superior Court justice denied the plaintiffs' motion for summary judgment, but rendered summary judgment against them, finding the restrictive covenant valid and enforceable at the behest of both defendants.

Although summary judgment may be rendered against the moving party as was done in the instant case, it is appropriate to

do so only where there is no genuine issue of material fact and the nonmoving party is entitled to a judgment as a matter of law. M.R.Civ.P. 56(c); *Tallwood Land & Development Co. v. Botka*, 352 A.2d 753, 755 (Me.1976); *Beckwith v. Rossi*, 157 Me. 532, 541, 175 A.2d 732, 737–38 (1961). The invocation of the summary judgment procedure does not permit the court to decide an issue of fact, but only to determine whether a genuine question of fact exists. *Tallwood Land & Development Co.* at 755. And, in the application of the rule, one must keep in mind that it is only for the purposes of his own motion that a moving party concedes the absence of a genuine factual issue. *Winter v. Casco Bank and Trust Co.*, 396 A.2d 1020, 1023 (Me.1979). So long as a genuine issue of material fact exists, notwithstanding both parties may have argued simultaneously that such an issue was nonexistent, the case must be disposed of by plenary trial and not by summary judgment. *Id.* at 1023. Furthermore, summary judgment is an extreme remedy which should be granted only when " 'the facts before the court so conclusively preclude ... [a party's] recovery' that a judgment in favor of the other party is the only possible result." *Wallingford v. Butcher*, 413 A.2d 162, 165 (Me.1980).

### 3. *Basis for the summary judgment*

The presiding justice ruled as a matter of law that the deed restriction to the effect that "[t]he premises hereby conveyed are to be used as a single family dwelling only" was enforceable for the following reasons:

(1) it was a covenant, clear and unambiguous in language, purporting in no uncertain terms to restrict the use to which the property may be put;

(2) it benefited the retained land or dominant estate, not only because the plaintiffs as purchasers of the property conveyed or servient estate could not use their land to compete with the recreational uses of the retained land, but for other reasons such as the rural setting and charm surrounding the Ricker recreation complex located in rural Maine;

(3) no changes have occurred in the operational uses to which the land retained has been devoted from the date of the imposition of the restriction in 1963 to the present day;

(4) the covenant in this case runs with the land and is enforceable by the defendant, Image, Inc.;

(5) the fact that the plaintiffs are having difficulty in selling the land does not justify the court's declaring the covenant unenforceable.

These findings were made purportedly from the contents of the parties' affidavits. Although in his affidavit Robert Friedlander stated that he had personal knowledge of the facts set forth therein, the only admissible evidentiary relevant facts of which he had personal knowledge and to which he was competent to testify (M.R. Civ.P. 56(e)) consisted of the following statement:

> The property is too large and too costly to maintain and heat to be practically used as a single-family residence, and all inquiries for lease or purchase have focused on use of the property for small scale business operations such as an antique store or medical clinic. The scope of the restriction is so broad on its face that enforcement of it, as a practical matter, deprives us of any reasonable economic return.

His sworn statement that "the restriction in the Campbell Cottage deed was simply intended to operate as a personal restrictive covenant to prevent my father or our family from going into competition with Poland Spring Inn from the Campbell Cottage site" was stated to be *on behalf* and thus could not qualify under the rule.

The affidavit of Mel Robbins, president of Image, does not purport to be made on personal knowledge. Furthermore, the statement therein that

> [a]ny use of the property [the servient estate] for purposes other than as a single family dwelling would alter the sur-

rounding rural environment benefiting the dominant parcel, threatening disruption of the ambiance of the area as well as traffic patterns, hours of operation, parking and other results of increased commercial or non-single family residence use[,]

is merely conclusory in import and does not set forth specific facts admissible in evidence as required by the rule. *See Lindsley v. Lindsley,* 390 A.2d 512, 513, n. 1 (Me.1978); *Richards Realty Co. v. Inhabitants of Town of Castle Hill,* 406 A.2d 412 (Me.1979).

In his counter-affidavit filed May 6, 1983 in opposition to the plaintiffs' motion for summary judgment in their favor, Saul Feldman, president of Ricker, stated under oath that at the time of the execution of the Ricker to Whiting deed, he was treasurer and chief operating officer of Ricker and was personally involved in his corporate capacity in the negotiations with George Friedlander, father of the plaintiffs and a principal officer in Whiting, negotiations which led to the execution of the Ricker to Whiting deed and the sale of the Campbell Cottage property. He further asserted that he on behalf of Ricker and George Friedlander on behalf of Whiting *specifically agreed* to the restriction that the use of the Campbell Cottage premises was to be as a single family dwelling only, the purpose being

> to assure that the considerable acreage with any buildings on property retained by Hiram Ricker surrounding and across Route 26 from the Campbell Cottage premises would continue to enjoy the then current use (housing and feeding of guests and use of recreational facilities) with no change in the use of the conveyed property. (Parenthetical language in original).

In his response to the plaintiffs' requests for admission, Saul Feldman on June 23, 1983, admitted that

> [t]he purpose of the "single-family dwelling" language in the deed was to prevent any use of the Campbell Cottage Proper-

ty which might compete with, or which the grantor believed might be incompatible with, the use of the retained property for housing and feeding of guests and recreational facilities,

but that such stated purpose was not exclusive. Another purpose, so he said, was to simply maintain the status quo of the area by retaining the single-family dwelling status of the Campbell Cottage which was to be conveyed; the remainder of the property retained by Hiram Ricker was maintained in the status quo by Hiram Ricker's ownership [except for the building and operation of the Poland Spring Inn following the sale of the Campbell Cottage]. Additionally, the Defendant Hiram Ricker & Sons, Inc. was and remains concerned about a possible traffic hazard if any of the property in the area of the land retained by Hiram Ricker is used in a manner which varies from the present and past status quo.

### 4. *Unilateral restriction*

I note that the deed restriction in the instant case purported to impose a use limitation only on the conveyed property, and that the deed did not place any reciprocal or other use limitation on the premises retained by Ricker, the grantor. The deed limitation was not part of a general development scheme such as where an owner of a large tract divides it into residential lots and places on each lot restrictions benefiting all the others. But land restrictions, unilateral in aspect, may be enforceable, provided they are reasonable and are imposed for the benefit of land in which, at the time of the origin of the restriction, the person creating it has a legally cognizable interest. In Maine, even though the grantee is not a signatory party to a deed, by accepting the deed he becomes bound by the commitments of expressed restrictive limitations contained therein to the extent that the same are reasonable and legally enforceable. *See Winthrop v. Fairbanks,* 41 Me. 307, 313 (1856); *Smith v. Ladd,* 41 Me. 314, 320 (1856). Thus, I agree with the

justice below that the stated deed restriction was a covenant binding on the plaintiffs and enforceable at the request of the Ricker corporation which retains an interest in the Image holdings by virtue of its ownership of the purchase money mortgage, provided the covenant is otherwise legally enforceable. The plaintiffs' assertion to the contrary is mistaken.

### 5. Construction of covenant

Absent intervening public or private rights, an owner of land may carve out and sell any portion thereof that he pleases, and the terms of his deed as justly and legally construed will regulate and measure the rights of the grantee, including the scope of restrictive covenants inserted therein. *See Ouellette v. Bolduc,* 440 A.2d 1042, 1045 (Me.1982); *Warren v. Blake,* 54 Me. 276, 281 (1866). In construing deeds, including restrictive covenants appearing therein, one looks at the instrument as a whole to ascertain the intention of the parties to the conveyance, *see Kinney v. Central Maine Power Co.,* 403 A.2d 346, 349 (Me.1979) and *Herrick v. Hopkins,* 23 Me. 217, 219 (1843), "the cardinal rule for the interpretation of deeds [being] the expressed intention of the parties, gathered from all parts of the instrument, giving each word its due force, and read in the light of existing conditions and circumstances." *Penley v. Emmons,* 117 Me. 108, 102 A. 972 (1918), quoted in *C Company v. City of Westbrook,* 269 A.2d 307, at 309 (Me.1970). It is only when language of the deed carries some ambiguity that resort may be had to established rules of construction. *Gillespie v. Worcester,* 322 A.2d 93, 95 (Me.1974); *C Company, supra,* at 309. In such circumstances, the deed will be examined in the light of the circumstances surrounding its execution; it may be interpreted with reference to the reason or motive entertained by the grantor in inserting, as in the instant case, the restrictive clause and in using therein the particular language in question. *Haight v. Hamor,* 83 Me. 453, 457–58, 22 A. 369, 371 (1891). Restrictive covenants ought not to

be extended by implication or enlarged by construction and deed provisions restricting the free use of property will be strictly construed against the limitation, doubts being resolved in favor of the unrestricted use of property. *See Naiman v. Bilodeau,* 225 A.2d 758, 759 (Me.1967); *Leavitt v. Davis,* 153 Me. 279, 136 A.2d 535 (1957). When the language of a contract or deed is reasonably susceptible of two different interpretations, then there is ambiguity. *See Lidstone v. Green,* 469 A.2d 843, 846 (Me. 1983); *Portland Valve, Inc. v. Rockwood Systems Corp.,* 460 A.2d 1383, 1387 (Me. 1983). Once an ambiguity is found, then extrinsic evidence may be admitted and considered to show the intention of the parties. *Portland Valve, Inc., supra,* at 1387; *T–M Oil Co., Inc. v. Pasquale,* 388 A.2d 82, 85 (Me.1978). And, when the ambiguity arises from language of a deed restriction reasonably and equally susceptible of two or more different constructions, that interpretation will be adopted which least restricts the free use of the land. *See Cimino v. Dill,* 64 Ill.Dec. 315, 108 Ill. App.3d 782, 439 N.E.2d 980, 983 (1982); *Glenmore Distilleries Co. v. Fiorella,* 273 Ky. 549, 117 S.W.2d 173, 176 (1938).

### 6. Ambiguity

The restrictive covenant in the instant case provides that "the premises hereby conveyed are to be used as a single family dwelling only." Feldman, in his affidavit as supplemented by his response to the plaintiffs' request for admission, affirmed (and this is consistent with the plaintiffs' argument before the Superior Court) that the single family dwelling restriction was imposed for the purpose of preventing any use of the Campbell Cottage "premises" which "might compete with, or which the grantor [Ricker] believed might be incompatible with," the then current Ricker operations conducted on the retained property, such as the housing and feeding of guests of the hotel and patrons of its recreational facilities, a purpose to be assured indirectly by the prescribed retention of the then exist-

ing use-status of the Campbell Cottage as a single family dwelling.

In the face of this characterization of the intendment of the restrictive covenant by one with personal knowledge of the negotiations leading to its adoption, one cannot say, as did the justice below, without a plenary hearing on the issue, that no genuine issue of fact existed permitting disposition of the case on motion for summary judgment. In his decision, the presiding justice made no finding as to which was the primary purpose of the restrictive covenant, its anticompetitive aspect or its residential limitation connotation. As a matter of law, he ruled that its alleged intended preservation of "the rural setting and charm surrounding the recreation complex" of the Ricker-Image commercial holdings is a "sufficient benefit" to allow the covenant to be enforced by both defendants as owners of the dominant estate. This record presents no evidence of the stated rural setting and charm on which the presiding justice anchored his decision.

Where the restrictive covenant in its language purported merely to impose a use restraint upon a single parcel of real estate for the benefit of the grantor's remaining land, and that concededly as an indirect anticompetitive use limitation for the protection of any of the existing and future mercantile uses of the dominant estate, and, in view of the express mention in the deed of the Campbell Cottage to which the restriction was meant to apply, an ambiguity arises from the use of the terminology

"the *premises* hereby conveyed are to be used *as* a single family dwelling only."

Did the parties mean that the existing Campbell Cottage as such could not be used for any purpose other than as a single family dwelling? Or was it the intent of the parties to impose the single family dwelling limitation on the land itself and not merely on the existing building? Land as such is not ordinarily and commonly said to be used *as* a dwelling, but may be said to be used *for* dwelling purposes. The terminology "the premises hereby con-

veyed" could have been intended by the parties to refer only to the Campbell Cottage, and not to the whole plot of land. *See Jones v. Fletcher*, 41 Me. 254, 256–57 (1856); *Gibbons v. Brandt*, 170 F.2d 385, 387 (7th Cir.1948); *United States v. Keach*, 480 F.2d 1274, 1284 (10th Cir.1973); *Reggiori v. Petrone*, 184 N.J.Super. 240, 445 A.2d 484, 485–86 (1981); *People v. Atwood*, 223 C.A.2d 316, 35 Cal.Rptr. 831, 835. Such possible disparity of meaning respecting the restrictive covenant required the ascertainment of the true intention of the parties by resort to the circumstances surrounding the execution of the deed, to the extent of giving it an interpretation with reference to the reason or motive upon which the grantor proceeded in using the language in question. *C Company v. City of Westbrook, supra,* at 309. It is an ancient principle of the common law, that when the words used in a deed, and especially in a restrictive covenant clause, are not sufficiently precise to fix its meaning beyond every uncertainty, the words are to be taken most strongly against the grantor. *Littlefield v. Hilton*, 110 Me. 495, 498, 87 A. 216, 217 (1913).

Where the instrument on its face raises a question as to the true intent of the parties in the use of the language thereof, this involves an issue of material fact precluding disposition by way of summary judgment. *Brown v. Heirs of Fuller*, 347 A.2d 127, 130, n. 4 (Me.1975). *See also C Company v. City of Westbrook*, 269 A.2d 307, 309 (Me.1970).

### 7. The restrictive covenant is a benefit to the dominant estate and runs with the land

The Superior Court justice ruled as a matter of law that the stated restrictive covenant was intended both to benefit the Ricker land retained and to run with the Ricker holdings in the hands of the purchasers thereof, here in favor of Image, Inc. Whether the parties intended a restrictive covenant to benefit land retained by the grantor, as distinguished from benefiting the mercantile operations of the

grantor corporation, and that the restriction attach itself to the land conveyed for the benefit of transferees of the dominant estate are questions of fact to be determined by a fair interpretation of the instrument creating the restraint, and, in the case of ambiguous language, by resort to the circumstances surrounding the execution of the document, including the parties' reasons and motives for the language used. Here, it is conceded that the purpose of the restriction was to protect the Ricker operations from competition. So far as the issue of the covenant running with the land (in favor of Image, Inc.), the deed itself contains no language purporting expressly to make the covenant one "running with the land," or "appurtenant" to the parcel retained by the grantor, or binding on "heirs, successors and assigns." *See Gilman v. Forgione,* 129 Me. 66, 68, 149 A. 620, 621 (1930).

I do agree that in certain cases, such as *Herrick v. Marshall,* 66 Me. 435 (1877) (reservation for eaves drops and open air of staircase window), it is obvious that the restrictive reservation is for the benefit of the dominant estate, and that in such circumstances words of limitation and inheritance are not necessary to enable the grantee of the dominant estate with its appurtenances to maintain the right as against those into whose hands the servient estate may fall. *Id.* at 438. But, where the facts of a situation do not present such an obvious intent as in the *Herrick* case, the absence of an express statement in the deed that the restriction shall be binding on the grantee's heirs, successors and assigns is a factor to be considered by the finder of facts in determining the intent of the parties in relation thereto. The omission of any language clearly delineating the intent of the parties respecting both the particular benefit to any specific portion of the land retained and whether the restraint would be binding on the heirs, successors and assigns of the grantee of the servient estate in this case rendered the covenant ambiguous and subject to interpretation, which will depend on the factual intentions of the parties as gathered from the surrounding circumstances and purposes of the restriction. *See Metropolitan Investment Company v. Sine,* 14 Utah 2d 36, 376 P.2d 940, at 945 (1962). Resolution of such factual issues requires plenary trial; they cannot be decided by summary judgment. *See Winter v. Casco Bank and Trust Co.,* 396 A.2d at 1023.

### 8. Anticompetitive aspect of restriction

The justice below ruled as a matter of law that the added reason underlying the single family dwelling restriction of wanting to maintain the existing rural setting and charm surrounding the Ricker recreation complex located in rural Maine was sufficient in and of itself to allow the enforcement of the covenant by both Ricker and Image, notwithstanding the factual anticompetitive aspect of the restraint.

Although this Court has yet to construe an anticompetitive deed restriction, it has long recognized that noncompetition agreements

are contrary to public policy and will be enforced only to the extent that they are reasonable and sweep no wider than necessary to protect the business interests in issue.

*Lord v. Lord,* 454 A.2d 830, 834 (Me.1983); *Roy v. Bolduc,* 140 Me. 103, 106–07, 34 A.2d 479, 481 (1943).

While restrictive deed covenants not to compete pose similar threats to freedom of competition as may arise from similar undertakings in other types of contractual situations, the majority of jurisdictions where the issue has come up have held that such covenants do run with the land and bind successors in interest so long as they are reasonable in scope and duration. *See e.g., Dick v. Sears-Roebuck & Co.,* 115 Conn. 122, 160 A. 432 (1932); *Quadro Stations, Inc. v. Gilley,* 7 N.C.App. 237, 172 S.E.2d 237 (1970); *Silverstein v. Shell Oil Company,* 40 A.D.2d 34, 337 N.Y.S.2d 442 (1972); *Whitinsville Plaza, Inc. v. Kotseas,* 378 Mass. 85, 390 N.E.2d 243 (1979). *See also,* 2 American Law of Property, § 9.28

at 414 (Casner Ed.1952 & Supp.); Annot. 25 A.L.R.3d 897 (1969). But such factors as the time period involved, the area of space encompassed and the extent of the limitation on the activities prohibited all raise questions of fact to be resolved at a trial on the merits. *Whitinsville Plaza, Inc.,* 390 N.E.2d at 252. The justice below did not take into account whether the anticompetitive purpose of the deed restriction was the primary purpose of the covenant, nor whether, given the literal restraint against any use other than for single family dwelling purposes, the anticompetitive aspect concededly underlying the inserted restriction was inseparable therefrom and had to be taken into consideration in relation to the enforceability of this deed restriction by Ricker and/or Image.

With the presence of a genuine issue of fact respecting the intention of the parties as to the scope of the restrictive covenant due to the want of particularity in the language used, it was error for the presiding justice to grant summary judgment against the moving party. It was not a question as to which party would probably prevail before the fact-finder. *Winter v. Casco Bank and Trust Co.,* 396 A.2d at 1023. Such should have to await plenary trial.

It could be, however, that on remand the court might consider the advisability of refusing to render any declaratory judgment in the matter as an exercise in sound judicial discretion pursuant to 14 M.R.S.A. § 5958.[1] In the instant case, the plaintiffs have proceeded on the ground that the scope of the restriction is so broad on its face that enforcement of it as a practical matter deprives them of any reasonable economic return. In his affidavit Robert Friedlander stated as fact that the Campbell Cottage is too large and too costly to maintain and heat to be used as a single family residence and that all inquiries for lease or purchase of the Campbell Cottage

plot of land have focused on the use of the property for small scale business operations such as an antique store or medical clinic. Though the asserted disparaging economic impact of the times on the present use of the Campbell Cottage solely as a single family dwelling might be a factor for consideration in a situation where a court of equity balances the equities between the parties, that reason as such when viewed in a vacuum is insufficient to destroy an otherwise valid restrictive covenant. *See Bates Manufacturing Company v. Franklin Company,* 218 A.2d 366, 368 (Me.1966); *Hooker v. Alexander,* 129 Conn. 433, 29 A.2d 308, 311 (1942). Absent a factual scenario which actually involves a specific mercantile or business operation or any use of the Campbell Cottage property or any part thereof for any purpose other than "a single family dwelling," it might be the best course of judicial valor in this case to abstain from declaring the rights of the parties respecting this restrictive covenant until the setting in which those rights are to be determined has become more concrete. Generally speaking, whether a declaratory judgment should be issued rests in the sound discretion of the trial court. *Eastern Fine Paper v. Garriga Trading Co., Inc.,* 457 A.2d 1111, 1112 (Me.1983); *Cape Elizabeth School Board v. Cape Elizabeth Teachers Association,* 435 A.2d 1381, 1383 (Me. 1981).

For all the above reasons, I would order vacation of the judgment of the Superior Court insofar as it renders summary judgment in favor of the defendants, and would remand the case for further proceedings consistent with my opinion.

---

1. 14 M.R.S.A. § 5958. *Discretion of court*
   The court may refuse to render or enter a declaratory judgment or decree where such
judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding.